**YUEN JUNG v. BARBER.**

No. 12455.

United States Court of Appeals
Ninth Circuit.

Oct. 4, 1950.

492

---

Jackson & Hertogs and Joseph S. Hertogs, all of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., Edgar R. Bonsall and Macklin Fleming, Asst. U. S. Attys., all of San Francisco, Cal. (Stanley Johnston, Adjudications Div. Imm & Nat. Service, San Francisco, Cal., on the brief), for appellee.

Before BIGGS, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

Appeal from an order denying a petition for naturalization. Right to naturalization was claimed on the ground of petitioner's service in the armed forces for a period of over three years. Denial was on the ground that petitioner "has failed to establish that he has been a person of good moral character", as required by the applicable section of the Nationality Act. Appellant asserts that in reaching that conclusion the court considered evidence which it was prohibited from receiving in a case like this, where application is founded on military service. The basis of the appeal is the claim that petitioner's honorable discharge is, under the law, conclusive evidence of good moral character.

There are two distinct sections providing for naturalization of persons who have served in the armed forces. One of these is referred to by the court in its order; the other is the one upon which appellant's brief and argument are based. In some respects appellant comes within the provisions of both.

These are sections 324 and 324A of the Nationality Act of 1940, § 324A having been added by Act of June 1, 1948, 62 Stat. 282, to replace Title 8, § 1001, which had expired. In Title 8 U.S.C.A. they are § 724 and § 724a.[1]

Section 724, as amended July 2, 1946, provides for naturalization of "a person, who has served honorably at any time in the United States Army * * * for a period or periods aggregating three years and who, if separated from such service, was separated under honorable conditions". Section 724a provides for naturalization of "any person * * * who has served honorably in an active-duty status in the military * * * forces * * * during either World War I or during a period beginning September 1, 1939, and ending December 31, 1946, or who, if separated from such service, was separated under honorable conditions". It is thus apparent that § 724a was intended to cover service during World War I or II, while § 724 covers military service in time of peace, as well as in time of war.

As petitioner was inducted into the Army on May 17, 1946, and thereafter served continuously until the present time (he was honorably discharged May 16, 1949, at the end of three years service, and reenlisted May 17, 1949), it is apparent that so far as period of service is concerned he comes within both sections.

The question which petitioner raises on this appeal arises out of the somewhat similar provisions of these two sections which dispense with certain requirements which apply in the ordinary naturalization proceeding. As to the applicant under § 724, if he apply while in service, or six months thereafter, "(1) No declaration of intention shall be required; (2) No certificate of arrival shall be required; (3) No residence within the jurisdiction of the court shall be required; (4) Such petitioner may be naturalized immediately * * *." And subdivision (e) provides: "Any such peri-

---

1. The numbering of these sections is unhappy, as § 724 has a subdivision (a) which makes for confusion between 724 (a) and 724a.

od or periods of service under honorable conditions, and good moral character, attachment to the principles of the Constitution of the United States, and favorable disposition toward the good order and happiness of the United States, during such service, shall be proved by duly authenticated copies of records of the executive departments having custody of the records of such service, and such authenticated copies of records shall be accepted in lieu of affidavits and testimony or depositions of witnesses." § 724a contains similar provisions.[2]

Petitioner contends that since all that is required of him by § 724 is his record of service under honorable conditions, that this is conclusive. And, further, that since the three year military service is substituted for the ordinary five year residence requirement, the court could not properly go into his conduct or character prior to such military service.

The facts upon which the court acted, and which make necessary an examination of the questions thus raised by petitioner, are not in dispute. In 1941 he arrived in the United States representing himself to be a citizen by reason of birth here. Before a Board of Special Inquiry, in that year, he swore falsely that he was born in San Francisco in 1912, and supported the claim with documents he knew were forged. He was released under bond as war conditions prevented his deportation. In 1942 he stated in his Selective Service questionnaire that he was born in San Francisco. In 1945 he was found guilty of violating the Selective Training and Service Act, 50 U.S.C.A.Appendix, § 301 et seq., in failing to notify his draft board of a change of status (he had previously received an occupational deferment), and he was sentenced to six months imprisonment.[3]

It does not appear from the record that he was guilty of any conduct indicating lack of good moral character after the date of his induction in the Army on May 17, 1946. It does appear that his Army records show his birthplace as San Francisco, but whether this information was obtained from him at the time of induction or from his selective service record does not appear.[4]

Both of these sections expressly dispense with the common requirement of five years' continuous residence in the United States.[5] § 724, subdivision (a), provides that one who has served honorably for the three years "may be naturalized without having resided, continuously immediately preced-

---

**2.** "(b) A person filing a petition under subsection (a) of this section shall comply in all respects with the requirements of this chapter except that—(1) he may be naturalized regardless of age, and notwithstanding the provisions of section 703 and 726 of this title; (2) no declaration of intention, no certificate of arrival, and no period of residence within the United States or any State shall be required; (3) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner; * * * (5) when serving in the military or naval forces of the United States, the service of the petitioner shall be proved either (1) by affidavits * * * or (2) by a duly authenticated certification from the executive department under which the petitioner is serving. Such affidavits or certifications shall state whether the petitioner has served honorably in an active-duty status during either World War I or during a period beginning September 1, 1939, and ending December 31, 1946".

**3.** He was probably not subject to such prosecution for the reasons stated in Kristensen v. McGrath, D.C.Cir., 179 F. 2d 796, which held that an alien illegally in this country, and subject to deportation order, was not liable to military service.

**4.** A few days after his induction an army recruiting officer wrote the Immigration Bureau asking "on what grounds this man was registered as an alien. He states he was born in San Francisco on 12 Jul 1912." The army authorities were advised, by reply, of petitioner's status, and were asked if he was to be discharged. The army reply was that regulations made no provision for such a discharge and that none was contemplated. Under Army Regulations 615-500, August 10, 1944, aliens could be inducted into the army.

**5.** As provided in Tit. 8, § 707.

ing the date of filing \* \* \* in the United States for at least five years \* \* \* ." [6] And § 724a provides that "no period of residence within the United States or any State shall be required". So far as § 724 is concerned, this express doing away with the five years' residence requirement, when considered with the language previously quoted from subdivision (e) of that section, to the effect that the three year period of service, and good moral character, etc., during such service, shall be proved by the service records, "and such authenticated copies of records shall be accepted in lieu of affidavits and testimony or depositions of witnesses", clearly indicates (1) that petitioner need only prove good moral character for the period of his service (providing it has been continuous), and (2) that he may do so by the authenticated record of his honorable service.

■ Appellant says that this requires us to hold that such proof, when made, is conclusive. We think that result does not follow, for § 734(d) of the same Title provides: "The United States shall have the right to appear before any court in any naturalization proceedings for the purpose of cross-examining the petitioner and the witnesses produced in support of the petition concerning any matter touching or in any way affecting the petitioner's right to admission to citizenship, and shall have the right to call witnesses, produce evidence, and be heard in opposition to the granting of any petition in naturalization proceedings."

Thus the United States may show, by cross-examination of this petitioner, or otherwise, that during the period of his military service, he was not a person of good moral character. But what is the consequence if it appear that the circumstances indicating want of good moral character occurred at a time prior to the period of petitioner's military service? May such evidence be received or considered?

The courts have had occasion to deal with a similar problem when considering proof required to be made under sections 707 and 709 which require a showing of good moral character for the five year period. They do not agree. In Application of Murra, 7 Cir., 178 F.2d 670, 673, the court, in holding that "the government in its inquiry as to the fitness of an applicant for naturalization is confined to the five year period immediately preceding the filing of the petition", said: "If a five year period is a 'minimum requirement,' as the government argues, it becomes meaningless. If the time fixed by Congress is 'minimum,' then it would seem to follow that the maximum time would be during all of the petitioner's life. We cannot believe that Congress meant other than what it said, that is, that if a petitioner meets the enumerated requirements for a period of five years immediately prior to the filing of his petition he is entitled to be admitted. We need not decide that a court is never justified in making inquiry concerning a petitioner previous to the five year period, but what we do think and hold is that even so the facts developed by such an inquiry cannot be used as the basis for disqualification."

On the other hand, in Molsen v. Young, 5 Cir., 182 F.2d 480, 483, it was stated: "We find no merit in the contention that the trial court, in its inquiry concerning the petitioner's alleged attachment to the principles of the Constitution and good moral character, was limited to the statutory

6. Where a petitioner's service has not been continuous, it is provided otherwise by subdivision (c) of § 724, as follows: "In case such petitioner's service was not continuous, petitioner's residence in the United States and State, good moral character, attachment to the principles of the Constitution of the United States, and favorable disposition toward the good order and happiness of the United States, during any period within five years immediately preceding the date of filing said petition between the periods of petitioner's service in the United States Army \* \* \* shall be verified in the petition filed under the provisions of subsection (a) of this section, and proved at the final hearing thereon by witnesses, citizens of the United States, in the same manner as required by section 709. Such verification and proof shall also be made as to any period between the termination of petitioner's service and the filing of the petition for naturalization."

period of five years prior to the filing of the petition for naturalization. The statute does not require that the evidence necessary to meet the tests of loyalty and good character be confined to the five year period. It merely disqualifies for citizenship those who cannot show the requisite loyalty and good moral character for at least five years prior to their application, and thereby fixes the minimum requirement as to these statutory qualifications which petitioners for citizenship must meet."

Each of the two cases reflecting these conflicting views finds support in decisions of other courts. We have held that § 724 has, in cases where military service has been continuous, substituted the three year period for the five year period for which proof must be made in the usual naturalization case. We must next determine whether proof that petitioner was, at some date prior to his military service, wanting in good moral character will warrant denial of his petition. Our conclusion must logically depend upon which of the contrasting views expressed in the cases cited we should adopt.

We think the language of § 724, viewed in the light of the other provisions to which we have referred, compels a conclusion that it was the intent of Congress to test the applicant's fitness solely by his moral character, (and other required attitudes) during the period of continuous military service mentioned in the Act. We think so, because we believe a like rule must obtain in the ordinary naturalization proceeding where the five year period is significant. To hold otherwise would sanction a denial of citizenship where the applicant's misconduct, and evident bad moral character, was many years in the past, and where a former bad record has been followed by many years of exemplary conduct with every evidence of reformation and subsequent good moral character. Such a conclusion would require a holding that Congress had enacted a legislative

doctrine of predestination and eternal damnation. All modern legislation dealing with crime and punishment proceeds upon the theory that aside from capital cases, no man is beyond redemption. We think a like principle underlies these provisions for naturalization.

This does not mean that the court may not inquire into the petitioner's character in prior periods. For such evidence is circumstantially relevant[7] as bearing upon petitioner's character during the five year period, or in a case like this, during the period of military service. But the ultimate fact to be determined, and the only material one, is his moral character within the specified period.

Section 724a makes an even more limited period of time material in respect to good moral character and related qualifications. This section does not, as does 724, provided that the authenticated record of service shall be "in lieu of affidavits and testimony or depositions of witnesses." It requires that "there shall be included in the petition the affidavits of at least two credible witnesses, citizens of the United States, stating that each such witness personally knows the petitioner to be a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States".

Special attention should be given to the use of the words "knows the petitioner *to be* a person of good moral character", etc. The deliberate intention of Congress to make only present good moral character relevant is thus made apparent, for this language is in marked contrast with the language of § 707: "* * * during all the periods referred to in this subsection has been and still is a person of good moral character * * *", and with that of section 709 requiring affidavits of witnesses "that the petitioner is and during all such period has been a person of good moral character".[8]

7. Compare for discussion of a similar rule, Wigmore on Evidence, 3d Ed. § 928.

8. § 724a adds a further safeguard relating to those naturalized before final discharge, to the effect that subsequent dishonorable discharge shall be ground for revocation of citizenship.

■ . Since applicant's petition conformed to the requirements of § 724a, and since his military service brings him within it, he is entitled to claim the rights afforded by it, notwithstanding the petition was made upon a form purporting to be prepared for use in § 724 cases.[9]

The evidence of applicant's past misconduct was relevant and properly considered for the purpose of determining whether in fact petitioner was a person of good moral character at the time of the filing of his petition.

Under the decision of this court in Wixman v. United States, 9 Cir., 167 F.2d 808, the court was not required to make findings.[10] But the court did incorporate in its order a finding which appears to be the sole basis for the order. The order recites: "For the reason that petitioner, Jim Yuen Jung, has failed to establish that he has been a person of good moral character as required by Section 324(a) of the Nationality Act of 1940, 8 U.S.C.A. 724a, his petition for naturalization is denied."

It is to be noted that the finding is that petitioner has failed to establish that he *has been* a person of good moral character, whereas, under section 724a he is entitled to citizenship if at the time of his petition he *then is* a person of good moral character. The unfortunate failure of the order to determine this ultimate fact is attributable to the fact that the court's order was in the precise language of the Examiner's recommendation.

We are not disposed to proceed, as did the court in Application of Murra, supra, in an attempt to weigh the evidence. Much can be said on either side. Since petitioner presented the forged documents in 1941, considerable time had elapsed during which,

admittedly, his conduct in the army has been good. The Examiner agrees that he has been a "good soldier", and has gained promotion and is now a sergeant. If it can be said that he claimed a false birthplace to gain admission to the army, that would not appear to be much different than claiming a false age in order to enter the army, a thing for which many have been highly praised.

Although petitioner was sworn and examined at the hearing, he was not interrogated for the purpose of ascertaining whether he had repented his former conduct. Most of the time when he was on the stand was given over to statements by the Examiner, and by his counsel, some by way of recital of facts, some by way of argument. The court was assured there was no dispute as to the facts. But one purported statement of fact made by petitioner's counsel was to the effect that petitioner had been very helpful to the Government in disclosing the source of the false documents previously used by him. It would appear from this statement that a Mr. Heckert, investigator of the immigration service, would be able to furnish important evidence regarding the circumstances of the original wrong-doing, and bearing upon the possibility of petitioner having repented and reformed. The testimony of Heckert was not obtained. On the other hand, it appears that petitioner was 29 years of age when he attempted his original fraudulent entry.

The condition of the record here appears to be due to the fact that each of the parties stood fast upon his or its respective theory, with neither of which this court can agree. The Government assumed that the proof of petitioner's past misconduct required rejection of his petition.[11] Appli-

---

9. The portion of the form relating to military service of the applicant was printed in 1941, before either section 1001 or 724a were enacted.

10. For a decision otherwise see Application of Murra, 7 Cir., 166 F.2d 605, and 7 Cir., 178 F.2d 670. As the Examiner's Report was supplemented by oral testimony of the petitioner before the court, the rule of the seventh circuit would require findings here, In re Jow

Gin, 175 F.2d 299, 303. As between the construction placed by this court in the Wixman case, upon Rule 81(a) (2), Fed. Rules Civ.Proc. 28 U.S.C.A., and that applied by the court in the Murra case, supra, the members of this court, as now constituted, think the Murra case has the better of the argument.

11. This position was sharpened by the Government's erroneous assumption, continued in this court, that § 724a had no

cant, on the other hand, contended that the record of military service under honorable conditions, was conclusive. Between them they failed to submit all possible proof, (such as the testimony of Investigator Heckert), or to examine petitioner fully upon the sole question for decision, namely, the question of whether petitioner, notwithstanding what went before, is now, as of the date of his petition, a person of good moral character. Such is a question of fact for the court, but the trial judge is entitled to the assistance of the parties in producing evidence to aid in his decision.

We do not overlook the fact that had the court entered an order simply reciting "Petition denied", we could not, without overruling Wixman v. United States, supra, reverse or remand upon this appeal. And we recognize the possibility of construing the court's order as merely ambiguous.

■ But the proceeding was heard upon the mistaken view that section 724a had no application. Such clearly was the theory of the Government and of the Examiner. The courts have rightly held that the burden of proving the existence of the requisite qualifications for naturalization are upon the applicant, and that admission to citizenship is essentially a matter of grace, rather than of right. But § 724a stands in a somewhat different position than some other naturalization laws. Its provisions were enacted as a reward for services rendered. One who, like petitioner, claims its benefits, should not be finally rejected without making sure that he has not shown himself worthy of what Congress intended the servicemen described in the Act to have.[12]

The United States Attorney has filed a brief on behalf of appellee in which he asserts that the appeal should be dismissed because the District Director for the Immigration and Naturalization Service is named as appellee, rather than the United States.

■ We think the point without merit. The appeal was taken by the filing of a notice of appeal pursuant to Rule 73, F.R. C.P. Under that rule the appellee need not be named. Maloney v. Spencer, 9 Cir., 170 F.2d 231, 232. Our attention has been called to the fact that the books are full of appeals in such cases in which no appellee is named. See, for example, Application of Murra, supra, and In re Fong Chew Chung, 9 Cir., 149 F.2d 904, decided by this court.

■ We hold that the case must be remanded to the district court with directions to make an appropriate order upon the basis of a finding as to whether petitioner is now, as of the date of filing his petition, a person of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States. Both the United States and the petitioner should be afforded the opportunity to furnish further evidence, should they so desire.

application here. As the Government considered it proven that petitioner, after his induction, had stated to the army that he was born in San Francisco, it took it for granted that immoral conduct had been proven within the period of petitioner's military service.

12. We have considered the question, not argued here, whether the order must be affirmed because of petitioner's original illegal entry. But since the requirement of lawful entry in the ordinary case, is based upon the statutory requirement of continuous residence, United States v. Kreticos, 59 App.D.C. 305, 40 F.2d 1020, we have concluded that since § 724a not only dispenses with certificates of arrival but expressly provides that "no period of residence within the United States * * * shall be required", lawful entry is not a condition to naturalization under this section.