**Galileo Ramos TAN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Misc. No. 96–00029 DAE.**

United States District Court,
D. Hawai'i.

July 23, 1996.

726

David P. McCauley, Damon Key Bocken Leong & Kupchak, Honolulu, Hawaii, for petitioner.

Mary Reiko Osaka, Department of Justice, Immigration and Naturalization Service, Honolulu, Hawaii, for respondent.

## ORDER GRANTING PETITION FOR REVIEW

DAVID ALAN EZRA, District Judge.

The court heard the Petition for Review on June 24, 1996. David P. McCauley, Esq., appeared on behalf of Petitioner, Sergeant Galileo Ramos Tan ("Sergeant Tan"); Mary Reiko Osaka, Esq., appeared on behalf of Respondent,[1] the Immigration and Naturalization Service ("INS"). After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Sergeant Tan's Petition for Review of the Denial of his Naturalization Application.

## BACKGROUND

Sergeant Tan is a 44–year–old native and citizen of the Philippines. He was admitted for permanent residence on June 3, 1981 as an alien in possession of a First–Preference immigrant visa as the unmarried son of a United States citizen. Petitioner's mother,

---

1. Respondent argues that service is defective under Fed.R.Civ.P. 4(i) because the Petitioner failed to comply with all of the requirements for service upon a United States agency. Sergeant Tan notes that Fed.R.Civ.P. 4(i) governs the service of a summons and a complaint, but does not address service of a petition for review of denial of a naturalization application; he claims to have followed the service requirements of 8 C.F.R. § 336.9(b).

In the instant case, the Respondent has appeared to waive objection to "improper service" in accepting service, responding to the motion, and generally communicating with opposing counsel in good faith. As Respondent was given adequate notice and time to respond, the court finds no prejudice as a result of any allegedly defective service. For these reasons, the court will overlook any technical defects in service to rule on the merits of this motion.

born in Hawaii, is a natural-born citizen of the United States. His mother and ten of his siblings are United States citizens or lawful permanent residents.

Although he was issued an immigrant visa and entered the United States as the unmarried son of a United States citizen, Sergeant Tan was secretly married in 1975 and had a wife, Florence, and a son in the Philippines at the time his First–Preference immigrant visa was issued. Therefore, he was not, in fact, lawfully admitted into the United States under First–Preference immigrant status.

On July 6, 1981, approximately one month after his admission as a permanent resident, Sergeant Tan enlisted in the United States Army. By August 1981, he was in Fort Jackson, South Carolina, undergoing basic training and advanced personnel training. In November 1981, he was transferred to his first duty station, Fort Polk, Louisiana.

In July 1981, Romeo Ramos Tan ("Romeo"), one of Sergeant Tan's brothers, travelled to the Philippines, married Florence, with the intent of petitioning for her immigration to the United States. At the INS office in Manila on September 2, 1981, Romeo admitted the fraud and withdrew his immigration petition for Florence.

Sergeant Tan insists that his mother organized the plan to bring his wife into the United States and that it was carried out without his knowledge. He claims that he was not informed of the events that transpired until February 1983, almost 1.5 years later, when he visited his mother in Honolulu during a one-month leave en route to his next duty station in Germany.

As for Sergeant Tan's military career, it spans thirteen years and includes tours of duty in the Persian Gulf Conflict. In addition to attaining the rank of Sergeant First Class in his twelfth year, Sergeant Tan has received numerous letters of appreciation, letters of commendation, and medals including the Army Achievement Medal, the Good Conduct Medal, and three Meritorious Service Medals. Pursuant to Army Regulation 601–210, Sergeant Tan was due to be discharged from the Army by early 1994 unless he became a United States citizen. Sergeant Tan took leave from active duty in Germany in May 1993 and requested that INS commence deportation proceedings, so that he could seek statutorily available relief from deportation.

## PROCEDURAL HISTORY

At his deportation hearing before an immigration judge in Honolulu, on February 16, 1994, Sergeant Tan admitted he had entered the United States in 1981 as the unmarried son of a United States citizen when he was in fact married. He conceded deportability and applied for relief in the form of a Waiver of Deportability under Immigration and Nationality Act ("INA") § 241(a)(1)(H), 8 U.S.C. § 1251(a)(1)(H), or Suspension of Deportation under INA § 244(b)(1), 8 U.S.C. § 1254(b)(1). The Immigration Law Judge ("ILJ") expressed doubt about the truthfulness of Petitioner's testimony that he had no knowledge of his brother's marriage to Petitioner's wife for immigration purposes. The ILJ stated that while Sergeant Tan's honorable military record, combat duty, and close family ties were outstanding factors in his favor, he refused to grant relief from deportation on the ground that Sergeant Tan "has given false testimony under oath during the deportation process for the purpose of obtaining a benefit under the Act." See INA § 101(f)(6), 8 U.S.C. § 1101(f)(6).

The ILJ's decision precluded Sergeant Tan from obtaining naturalized citizenship and prompted his honorable discharge from the Army on May 5, 1994. Thereafter, Sergeant Tan returned to the Philippines.

On November 22, 1994, as a result of Presidential Executive Order No. 12939 ("Presidential Order"), Sergeant Tan became eligible for expedited naturalization under INA § 329, 8 U.S.C. § 1440. INS permitted Sergeant Tan to visit the United States under special parole status solely for the purpose of hearing his naturalization application, and he was accorded a naturalization interview in Honolulu on June 19, 1995.

In a written decision dated July 17, 1995, INS denied his application on grounds that he lacked good moral character under INA § 101(f)(6), because during the one-year period for which good character is required, "[he]

gave false testimony for the purpose of obtaining any benefit under the [INA]." Sergeant Tan requested a hearing before an immigration officer; the hearing was held on September 21, 1995 and in a subsequent letter dated December 19, 1995, INS affirmed its July 17, 1995 decision. In the instant petition, Sergeant Tan seeks review by this court of the July 17, 1995 decision denying his application for naturalization.

### STANDARD OF REVIEW

■ · Pursuant to INA § 310(c), 8 U.S.C. § 1421(c):

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States District Court for the district in which such person resides.... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c) (1996). The petitioner bears the burden of proof; any doubts must be resolved against him and in favor of the government. *Berenyi v. District Director,* 385 U.S. 630, 639, 87 S.Ct. 666, 671–72, 17 L.Ed.2d 656 (1967).

### DISCUSSION

On July 17, 1995, INS denied Sergeant Tan's application for naturalization submitted pursuant to INA § 329, 8 U.S.C. § 1440 ("Section 329" or "8 U.S.C. § 1440") based on its finding that he did not have the requisite good moral character required by statute. The issue before the court is whether Sergeant Tan can in fact meet the good moral character requirement for the purposes of naturalization under INA § 329.

Sergeant Tan emphasizes his outstanding military record in his attempt to establish himself as a person of good moral character by a preponderance of the evidence. He points out that he received numerous medals and certificates of achievement in the military during his twelve-year career, *see* Petition for Review, Exh. D–F, and he attaches a number of letters from high-ranking officers of the U.S. Army praising him for his dedication, loyalty, and high personal and professional standards, *id.,* Exh. G & H.

Sergeant Tan is seeking review of the ILJ's findings and conclusions because he believes that INS improperly relied on conduct prior to the statutory one-year period to deny him naturalization. Sergeant Tan maintains that the INS decision negates his outstanding military record in relying on one incident that occurred substantially before the one-year period prescribed in the statute. Also Sergeant Tan disagrees with INS's continuing violation theory that brings his alleged false statements at a hearing on February 16, 1994 into the one-year statutory time period. He steadfastly declares that he has always told the truth and continues to do so regarding his wife's fraudulent marriage to his brother for immigration purposes.

INS argues that the ILJ's determination that Sergeant Tan testified falsely is final and not subject to review by this court. They contend that the only issue before this court is whether the "false testimony" here forecloses a finding of good moral character required for naturalization under INA § 329.

INS argues that Sergeant Tan does not qualify for naturalization under INA § 329 because he submitted false testimony at the February 1994 hearing and in subsequent statements. INS also argues that Sergeant Tan has a history and pattern [2] of alternatively ignoring and manipulating the laws of the United States and that the whole panoply of these lies should be taken into account in determining moral character.

Determining Sergeant Tan's eligibility for naturalization under INA § 329 is a two-part

---

**2.** INS relies on the following as evidence refuting a showing of good moral character: (a) fraudulent immigration under the First-Preference category, (b) lying about his immigration status for Army enlistment, and then prematurely applying for naturalization (c) attempting to fraudulently obtain immigration benefits for his wife and child, and successfully obtaining military benefits for them, (d) writing to the President for support without mentioning the fraud, and (e) 1991 sworn statement claiming an invalid marriage, etc. *See* INS Response, at 12–13.

test. First, the court must determine if Sergeant Tan meets the statutory requirement set forth by the Presidential Order. Second, the court must determine whether Sergeant Tan meets the moral character requirement.

### A. The Presidential Order

■ The Presidential Order codified in INA § 329, 8 U.S.C. § 1440 states:

Any person who, while an alien or a noncitizen national of the United States, has served honorably in an active-duty status ... in military operations involving armed conflict with a hostile foreign force, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section ..., whether or not he has been lawfully admitted to the United States for permanent residence.

8 U.S.C. § 1440(a).

It is undisputed that Sergeant Tan served with distinction as an active-duty non-commissioned officer in the United States Army during the Persian Gulf Conflict and in Operations Desert Shield and Desert Storm. Also, the record indicates that he was honorably discharged from the Army on May 5, 1994. Thus, in the instant case, there is no doubt that Sergeant Tan qualifies for consideration of naturalization under 8 U.S.C. § 1440(a). Although Sergeant Tan satisfies the requirements set forth in the Presidential Order, the inquiry does not end there. Sergeant Tan must also meet a moral character requirement set forth in the accompanying regulations.

### B. Moral Character Requirement

■ To be eligible for naturalization under 8 U.S.C. § 1440, an applicant must show that he or she "[h]as been, *for at least one year* prior to filing the application for naturalization, and continues to be, of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States." 8 C.F.R. § 329.2(d) (emphasis added).

"Good moral character ... was intended by Congress to mean a broad attachment to the principles of the Constitution of the United States, and disposition to the good order and happiness of the United States." *Sugarman v. Dougall,* 413 U.S. 634, 660, 93 S.Ct. 2861, 2866, 37 L.Ed.2d 853 (1973) (citing H.R.Rep. No. 1365, 82d Cong.2d Sess., 78, 80 (1952)). The federal statutes state that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was ... one who has given false testimony for the purpose of obtaining any benefit under this chapter." 8 U.S.C. § 1101(f)(6)(1996). However, it is important to note that "the fact that any person is not within any of the [enumerated] classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101.

■ Although the regulations state that a petitioner must have been of good moral character for at least one year prior to the filing of the application, case law indicates that events transpiring outside of that designated period may be relevant to that determination. *See Yuen Jung v. Barber,* 184 F.2d 491, 494–95 (9th Cir.1950). In *Yuen,* the Ninth Circuit held that petitioner's character in prior periods was circumstantially relevant as bearing upon petitioner's character during the period designated by statute.[3] *Id.*

In *Petition for Naturalization of Suey Chin,* 173 F.Supp. 510 (S.D.N.Y.1959), the district court held that an alien who was an honorably discharged veteran of World War II and a resident of the United States for over 25 years, was not of good moral character and could not qualify for INA § 329 naturalization. That court found that the petitioner's use of narcotics and 15–year addiction prior to the date of filing of his petition could not be used as a basis for denial of naturalization, but could be considered as bearing on the question of good character within the requisite period. *Suey Chin,* 173

---

**3.** In *Yuen,* the Ninth Circuit remanded the case back to the district judge to determine if petitioner was of good moral character during the three-

year period of military service as set forth by the statute. *See Yuen,* 184 F.2d at 496.

F.Supp. at 513. In that case, Suey Chin admitted that he used drugs several times during the statutory period; INS evaluated that information in context of his previous drug habit to determine that he was probably still a habitual user and therefore lacking in good moral character. *Id.* at 513–514.

The Fourth Circuit also held that while the trial court may consider evidence of crimes committed prior to the statutory period as bearing upon the question of character within that period, it may not deny a petition for naturalization based on the commission of crimes prior to that statutorily-mandated period. *Marcantonio v. United States,* 185 F.2d 934, 937 (4th Cir.1950). In *Marcantonio,* the Fourth Circuit reversed the district court's denial of a petition for naturalization where the district court found that the petitioner had been of good moral character for the five-year period preceding the filing of the petition, but nevertheless denied the petition based on convictions prior to that period. *Id.* The *Marcantonio* court determined that the trial court erred in basing its denial of naturalization on the commission of crimes prior to the five-year period, for the effect of this was to add to the statute a condition which it does not contain.[4] *Id.* It is important to note when comparing the facts to the instant case that the statute in *Marcantonio* required a showing of good moral character for *at least* five years preceding the date of filing for the petition for naturalization. *Id.* at 936–37.

The record indicates that Petitioner filed for naturalization under INA § 329 on June 19, 1995. *See* INS Response, Exh. A. Thus the relevant period of inquiry into Petition-

er's moral character is from approximately June 19, 1994 to June 19, 1995.[5] INS does not dispute that Tan meets the good moral character requirements during the year preceding his application. Rather they rely on the fact that the one-year period is not the only period of time which should be considered.

Contending that the court may not evaluate moral character in a vacuum, INS urges the court to look beyond the one-year period and evaluate the entire person. INS relies on the fact that the regulation only establishes a minimum time period for consideration, not an absolute one-year framework.

In reverse chronological order, INS argues that Sergeant Tan cannot show good moral character because he recently lied at the February 1994 hearing.[6] They also ask the court to consider the fact that in seeking the Executive Office's assistance to become a citizen, Sergeant Tan conveniently failed to mention his fraud in immigrating and enlisting. *See* INS Response, Exh. F. Moreover, INS disputes the validity of Sergeant Tan's sworn statement submitted to INS in 1991 where he professes that his marriage was not valid because he lacked parental approval. *See* INS Response, Exh. E. Finally, INS argues that Sergeant Tan fails the moral character inquiry because he did not timely submit to deportation proceedings even though he knew he was here illegally.

All of INS's arguments and examples of failed moral character are derivatives of events in 1981 and 1983. INS considers each letter, statement, or testimony disavowing Sergeant Tan's association with the fraudu-

---

4. The Fourth Circuit held that "[w]hile wide discretion is lodged in the judge who hears a petition for naturalization, this discretion cannot be exercised arbitrarily or in a manner which adds to the requirements contained in the act, which must be liberally construed in favor of the petitioner." *Marcantonio,* 185 F.2d at 937 (internal citations omitted).

5. The court finds the reasoning in *Marcantonio* persuasive for the proposition that the court must follow the general time frame set forth in the regulations; the court in *Marcantonio* focused on the five-year period preceding the filing of his application even though the statute in that case stated that petitioner must show that he has

been of good moral character for "at least" five years. *See Marcantonio,* 185 F.2d at 936–37. Thus, although the regulations state that the applicant must show that he "has been of good moral character for at least one year prior to filing the application for naturalization," 8 C.F.R. § 329.2(d), the court finds that for all intents and purposes that period in this case extends only back to a date on or about June 19, 1994.

6. According to INS, the ILJ finding that Petitioner testified falsely regarding his knowledge of the fraudulent marriage for the purpose of obtaining a benefit under the INS in violation of § 101(f)(6) is final and not subject to review.

lent marriage scheme to be a ratification of the prior conduct and further evidence that Sergeant Tan lacks good moral character. The court disagrees.

■ First, the court notes that each of the events referenced, including Sergeant Tan's testimony at the February 1994 hearing, was previous to the one-year period delineated in the regulations. While the court is cognizant of the fact that the regulations do not establish a rigid time-frame, it is clear from the above cases, that this court may not ignore the time period set forth in the regulations. *See Marcantonio,* 185 F.2d at 937. The case law clearly permits this court to consider conduct and events prior to the regulatory period as bearing on the question of good moral character within the requisite period so long as such events are not the basis for the court's denial of the petition.

By considering events substantially outside the framework set forth in the regulations, this court would essentially be adding a condition that the Congress had not intended. *Id.* The regulations do not require the petitioner to have impeccable character throughout his life; the Congress deliberately narrowed the focus to the year preceding the application. While events outside the time period may be historically relevant to the moral character determination, these events cannot in and of themselves preclude a finding of good moral character. The court is bound by the regulations and cannot use events substantially outside the time period set forth in the regulations as the basis for denying Sergeant Tan's application for naturalization.

■ Second, even assuming the court follows the totality of circumstances approach proscribed by INS, the court finds that the numerous medals, certificates, and letters of recommendation commending Sergeant Tan for his hard work, loyalty, and integrity consistently over the years outweigh the isolated incidents mentioned above.[7]

The ILJ acknowledged and this court agrees that there is overwhelming evidence demonstrating that Sergeant Tan's activities, conduct, and disposition favors the good order and happiness of the United States. *See* Petition for Review, Exh. K, at 5. There is no dispute that Sergeant Tan served honorably in the military forces for over 12 years and was commended for exemplary performance, loyalty and dedication. *See* Petition for Review, Exhs. D–1 to D–16. However, the ILJ then determined that Sergeant Tan's testimony at the hearing regarding the fraudulent scheme to immigrate his wife and the couple's son was "simply incredible and does not have a ring of truth." *See* Petition for Review, Exh. K, at 7.

A finding that testimony lacked credibility does not alone justify the conclusion that false testimony has been given under the meaning of 8 U.S.C. § 1101(f)(6). *See Rodriguez–Gutierrez v. INS,* 59 F.3d 504, 507 (5th Cir.1995). To assume that "a witness whose testimony is not accepted by the trier of fact is a perjurer and not a person of good moral character ... is not only legally invalid, but is contrary to the basic sense of fairness upon which our legal system is founded." *Id.* (quoting *Acosta v. Landon,* 125 F.Supp. 434, 441 (S.D.Cal.1954)). Furthermore, the Supreme Court states that 8 U.S.C. § 1101(f)(6) applies only to those misrepresentations made with the subjective intent of obtaining immigration benefits. *Kungys v. United States,* 485 U.S. 759, 780, 108 S.Ct. 1537, 1551, 99 L.Ed.2d 839 (1988). *Kungys* and *Rodriguez–Gutierrez* are instructive here.

The fact of the matter is that Sergeant Tan has consistently maintained that he had no knowledge of the fraudulent marriage scheme. While it may be difficult to believe under the circumstances, INS has no hard evidence that he was in fact lying *for the purpose of obtaining immigration benefits.*[8]

---

7. The ILJ found and this court agrees that it is not appropriate to consider Sergeant Tan's original fraudulent act of concealing his marriage when he obtained entry into the United States as the unmarried son of a United States citizen. *See* 8 U.S.C. § 1440 (an applicant need not have been lawfully admitted to the United States for permanent residence for relief under this statute); *Liwanag v. INS,* 872 F.2d 685 (5th Cir. 1989).

8. Sergeant Tan's brother, Romeo, made a statement near the time of the incident that implicated Sergeant Tan in the scheme. Romeo has

In fact, the ILJ's comments at the February 16, 1994 hearing point to the contrary.[9] In light of the large body of evidence demonstrating Sergeant Tan's good moral character and the curious circumstances of the immigration hearing in February 1994,[10] the court finds the ILJ's credibility assessment and subsequent conclusion that Sergeant Tan lacked good moral character to be flawed. The ILJ erred by giving undue influence to one aspect of Sergeant Tan's testimony— namely that relating to his knowledge of the fraudulent attempt to bring his wife to America—as being dispositive of Sergeant Tan's moral character. The court concludes that in assessing his moral character under the circumstances, Sergeant Tan is not precluded from relief under INA § 329.

Moreover, the court finds INS's continuing violation theory too attenuated and speculative to be a proper basis for clearly more forgiving than the position taken by the INS in this case. To continue to punish Sergeant Tan for his actions in 1981 and 1983 would be tantamount to eternal damnation, and the Ninth Circuit explicitly rejected "a holding that Congress has enacted a legislative doctrine of predestination and eternal damnation." *Yuen Jung*, 184 F.2d at 495. In examining the facts and law anew, as the court must do in a *de novo* review, the court holds that INS's arguments refuting Sergeant Tan's showing of good moral character are insufficient to preclude Sergeant Tan from naturalization here. Sergeant Tan has

clearly met his burden in showing that he qualifies for naturalization under INA § 329, 8 U.S.C. § 1440. Accordingly, the court finds in favor of Sergeant Tan's Petition for Review and directs the INS to GRANT Petitioner's request for naturalization pursuant to 8 U.S.C. § 1440.

## CONCLUSION

For the reasons stated above, the court GRANTS Petitioner's Appeal of the July 17, 1995 Order denying his naturalization application. The court hereby REVERSES the ILJ's ruling as to Sergeant Tan's application for naturalization under INA § 329 and REMANDS the case with instructions to process Sergeant Tan's application for naturalization as set forth in 8 U.S.C. § 1440.

IT IS SO ORDERED.

---

since recanted that testimony to say that his brother was not involved in any way. As to the other evidence on this issue, the Government failed to bring forth any witnesses or other proof that Sergeant Tan testimony was false.

**9.** The ILJ stated at the February 16, 1994 hearing:

It seems to me the respondent has a very strong case for the 241(a)(1)(H) waiver providing I find that he is credible and his testimony is in every way credible. I have some doubt ... about [Sergeant Tan's] assertion that he had no knowledge that his brother married his wife. If this is his testimony. And, of course, if I find that his testimony is not truthful during the proceedings in any material respect then, of course, I would deny any form of relief.

Petition for Review, Exh. J, at 11. The ILJ then called for a ten-minute recess, instructing Ser-

geant Tan's counsel to "talk to his client" and explain that if he did not testify in a manner the ILJ considered truthful, "it almost mandates a denial" of relief from his standpoint. *Id.* at 12.

Sergeant Tan understood the court's instruction to mean that if he changed his testimony to acknowledge a role in the scheme to immigrate his wife, the ILJ would grant him relief. Despite this understanding, Sergeant Tan nevertheless testified, consistent with his previous statements, that he was not aware of the fraud until several years after the incident.

**10.** Sergeant Tan was in a no-win situation: he was penalized by the immigration judge for not recanting his previous statements that he did not know of the fraudulent marriage schemes; however, he could have been penalized if he had admitted involvement or knowledge of the same. In either case, an event that occurred a decade prior would effectively preclude him from naturalization.