104 F.3d 1127
 97 Cal. Daily Op. Serv. 8, 97 Daily Journal D.A.R. 41
Manuel Augusto SANTAMARIA-AMES, aka: Manuel A.
Santamaria-Ames, Petitioner-Appellant,
v.
IMMIGRATION AND NATURALIZATION SERVICE, District Director,
Respondent-Appellee.
 No. 95-55805.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1996.
Decided Dec. 31, 1996.
 
 John Stephen Glaser and William B. Bennett, Manulkin, Glaser & Bennett, Fountain Valley, California, for Petitioner-Appellant.
 Jeffrey J. Bernstein and Karen A. Herrling, United States Department of Justice, Washington, DC, for Respondent-Appellee.
 Appeal from the United States District Court for the Central District of California, Manuel L. Real, District Judge, Presiding. D.C. No. Api-mhf-utj.
 Before: BROWNING, THOMPSON, and THOMAS, Circuit Judges.
 THOMAS, Circuit Judge:
 
 
 1
 This case presents the question of how past criminal behavior should be considered in naturalization proceedings involving noncitizen veterans qualifying for special treatment under 8 U.S.C. § 1440.
 
 I.
 
 2
 Congress chose to reward noncitizens who had honorably served in the armed forces of the United States during certain wartime hostilities by relaxing preconditions for their naturalization. For these veterans, Congress eliminated the residency requirement, but provided that the applicant "shall comply in all other respects with the requirements of this subchapter...." 8 U.S.C. § 1440(b) (1996).[1] Normally, a naturalization candidate must reside continuously in the United States for five years immediately preceding the application and show he or she "has been and still is a person of good moral character" during that period. 8 U.S.C. § 1427(a)(3) (1996).[2]
 
 
 3
 Because Congress did not specify the time period during which a qualifying noncitizen veteran should demonstrate good moral character, the Immigration and Naturalization Service ("INS") promulgated a regulation providing that a section 1440 applicant:
 
 
 4
 Has been, for at least one year prior to filing the application for naturalization, and continues to be, of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States.
 
 
 5
 8 C.F.R. § 329.2(d) (1996).
 
 II.
 
 6
 Against this general legal backdrop, we consider the facts of this case. Petitioner Manual Augusto Santamaria-Ames is a native and citizen of Peru. He entered the United States at age nine in 1966, as a permanent resident alien. His father, mother, and four sisters all live in the United States. Santamaria-Ames is married to a United States citizen, with whom he has one child.
 
 
 7
 In 1974, Santamaria-Ames entered into active service in the army during the Vietnam War. His army career was not successful. He received three Article 15 violations and was counseled on fifteen occasions for disciplinary violations while on active duty. As a result, Santamaria-Ames was recommended for an early separation from the army due to unsuitability. After eight months and twenty-seven days of service, he was discharged from active service under honorable conditions.
 
 
 8
 Upon return to civilian life, Santamaria-Ames entered a life of crime. From his discharge through 1989, he had twenty arrests, five felony convictions and twelve misdemeanor convictions. He was convicted of battery, assault with a deadly weapon, burglary, possession of a controlled substance, being under the influence of a controlled substance, and felony hit and run.
 
 
 9
 Santamaria-Ames engaged in criminal activity even after deportation proceedings had been instituted against him. In 1980, he was arrested and convicted of burglary and felony burglary. As a result, the INS issued an Order to Show Cause in 1981 finding Santamaria-Ames to be deportable under 8 U.S.C. § 1251(a)(4). After being placed in deportation proceedings, he applied for a waiver of deportability pursuant to section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). While such proceeding was pending before the Immigration Judge, Santamaria-Ames was convicted for possession of heroin and for felony hit and run. After the Immigration Judge denied his section 212(c) request for a waiver of deportability in 1986, Santamaria-Ames appealed to the Bureau of Immigration Appeals ("BIA"). While the appeal was pending, he was convicted of four misdemeanor vehicle code violations and for possession of a controlled substance. There is no record of Santamaria-Ames committing a crime since April 1989.
 
 
 10
 In February 1992, the BIA denied his appeal, holding that his "equities though outstanding d[id] not overcome his repeated convictions to warrant a grant of 212(c) relief." On appeal, we held the BIA did not abuse its discretion in denying section 212(c) relief.
 
 
 11
 In June 1992, Santamaria-Ames filed a Motion to Reopen and and Motion for Reconsideration of section 212(c) relief with the BIA. He contended that new facts made reopening necessary, including his claim that he was eligible for naturalization as a Vietnam veteran pursuant to 8 U.S.C. § 1440. The BIA denied the motion, holding that the deportation proceedings did not preclude Santamaria-Ames from pursuing naturalization and that there was no new evidence presented which would alter the previous BIA decision. The BIA's denial of the Motion to Reopen is the subject of a companion appeal, No. 95-70365.
 
 
 12
 Santamaria-Ames filed an application for naturalization on May 11, 1992. On January 19, 1993, the INS conducted an interview and examination of Santamaria-Ames. On January 9, 1995, he filed a motion for naturalization with the district court pursuant to 8 U.S.C. § 1447(b) because the INS had not yet issued a decision on Santamaria-Ames's application. The INS filed its Response to Petitioner's Motion for Naturalization on May 1, 1995, arguing that in light of his extensive criminal record Santamaria-Ames did not establish that for one year prior to filing his application he was, and continues to be, a person of good moral character as required by 8 C.F.R. § 329.2(d). The district judge denied the naturalization motion without a hearing on May 8, 1995, "for the reasons stated in District Counsel's Response to Petitioner's Motion for Naturalization." From this decision, Santamaria-Ames appeals.
 
 III.
 
 13
 The first question we must consider is whether, as Santamaria-Ames claims, the INS is precluded from examining character issues predating the section 329.2(d) one-year period.
 
 
 14
 Where the plain meaning of a statute is unambiguous, that meaning is controlling unless it is at odds with the drafters' intent. Almero v. INS, 18 F.3d 757, 760 (9th Cir.1994). Similarly, the plain meaning of language in a regulation governs unless that meaning would lead to absurd results. Reno v. National Transp. Safety Board, 45 F.3d 1375, 1379 (9th Cir.1995).
 
 
 15
 Both the plain meaning of 8 U.S.C. §§ 1440 and 1427, as well as 8 C.F.R. § 329.2(d), indicate that conduct prior to the one-year regulatory period may be examined. Because servicemen and servicewomen are not exempt from section 1427's good moral character requirements, 8 U.S.C. § 1427(e) applies to determinations of good moral character under section 1440. See 8 U.S.C. § 1440(b).
 
 
 16
 Section 1427(e) provides that in determining good moral character, the INS "may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." When applied to section 1440, "that period" refers to the one-year regulatory period. Thus, the INS and the district court may consider conduct prior to the one-year regulatory period in determining whether an otherwise qualifying veteran has established the requisite good moral character to merit naturalization.
 
 
 17
 This conclusion is confirmed by INS regulations. Section 329.2 states that to be eligible for naturalization under section 1440, an applicant must comply "with all other requirements for naturalization as provided in part 316 of this chapter" with certain exceptions. 8 C.F.R. § 329.2(e). Those exceptions do not exempt the applicant from the requirements relating to good moral character in part 316. Specifically, part 316 states:
 
 
 18
 [T]he Service shall evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence. The Service is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.
 
 
 19
 8 C.F.R. § 316.10(a)(2) (emphasis added). The regulatory period of one year for veterans must be substituted for the term "five years" in this regulation, but otherwise section 316.10 applies to section 1440.[3]
 
 
 20
 Accordingly, we hold that conduct predating the regulatory period established in 8 C.F.R. § 329.2(d) may be considered by the INS or the district court in determining naturalization eligibility under 8 U.S.C. § 1440.
 
 IV.
 
 21
 We must next decide, as the INS argues, whether the INS and the district court may rely solely on pre-regulatory period conduct as the basis for denying naturalization. This is a question of first impression concerning section 1440 applications.[4] The only time we have considered an analogous question was in Yuen Jung v. Barber, 184 F.2d 491 (9th Cir.1950).
 
 
 22
 In Yuen, the petitioner applied for naturalization under (a) 8 U.S.C. § 724a (the predecessor to 8 U.S.C. § 1439 which permitted naturalization of persons who have served honorably in the military for periods of three years or more and who establish good moral character during such service), and (b) 8 U.S.C. § 724a (the predecessor to 8 U.S.C. § 1440, which at that time required that only present good moral character had to be established).[5] The district court denied the petition, stating that petitioner "has failed to establish that he has been a person of good moral character." Id. at 492. The petitioner argued that under section 724 he need only establish his record of honorable service in the army to show good moral character during his period of service, while the government argued that his past misconduct alone was enough to reject his petition. Judge Pope differed with both:
 
 
 23
 We think the language of Sec. 724 ... compels a conclusion that it was the intent of Congress to test the applicant's fitness solely by his moral character, (and other required attitudes) during the period of continuous military service mentioned in the Act [three years]. We think so, because we believe a like rule must obtain in the ordinary naturalization proceeding where the five year period is significant. To hold otherwise would sanction a denial of citizenship where the applicant's misconduct, and evident bad moral character, was many years in the past, and where a former bad record has been followed by many years of exemplary conduct with every evidence of reformation and subsequent good moral character. Such a conclusion would require a holding that Congress had enacted a legislative doctrine of predestination and eternal damnation. All modern legislation dealing with crime and punishment proceeds upon the theory that aside from capital cases, no man is beyond redemption. We think a like principle underlies these provisions for naturalization.This does not mean that the court may not inquire into the petitioner's character in prior periods. For such evidence is circumstantially relevant as bearing upon petitioner's character during the five year period, or in a case like this, during the period of military service. But the ultimate fact to be determined, and the only material one, is his moral character within the specified period.
 
 
 24
 Id. at 495 (emphasis added).
 
 
 25
 Similarly, Judge Pope noted that under section 724a, the relevant inquiry was whether the petitioner has established present good moral character, but evidence of past misconduct was relevant to such inquiry. Id. at 496. Accordingly, Yuen reversed the district court's holding that petitioner "has failed to establish that he has been a person of good moral character" because the holding did not address his present moral character. The case was remanded for a hearing on that issue.
 
 
 26
 In accordance with Yuen, we hold that under 8 U.S.C. § 1440 and 8 C.F.R. § 329.2(d) the pertinent inquiry is whether the petitioner is presently of good moral character and has demonstrated good moral character from the year preceding the filing of his application to the present. Criminal conduct and other behavior prior to the one-year period may be examined. Whether the petitioner can establish that he has reformed and rehabilitated from this prior conduct is germane to the determination of whether he has established good moral character from the beginning of the one-year period to the present. Id.; see also Ralich v. United States, 185 F.2d 784, 787-788 (8th Cir.1950). If the petitioner demonstrates "exemplary conduct with every evidence of reformation and subsequent good moral character" from the beginning of the one-year regulatory period to the present, then his application cannot be denied based solely on his prior criminal record, although it is highly relevant to the ultimate determination. See Yuen, 184 F.2d at 495.[6] This rule is consistent with the legislative history of 8 U.S.C. § 1440, which indicates that relief from some of the burdensome naturalization requirements has been provided as a reward for aliens who served honorably in wartime hostilities. Mason v. Brooks, 862 F.2d 190, 193 (9th Cir.1988); S.Rep. No. 90-1292, 90th Cong., 2nd Sess. (1968).[7]
 
 
 27
 In this case, the district court erred by holding pre-regulatory period conduct preclusive to naturalization without affording Santamaria-Ames the chance to present evidence as to whether during the regulatory period he was, and continues to be "of good moral character, attached to the principles of the Constitution of the United States and favorably disposed toward the good order and happiness of the United States." 8 C.F.R. § 329.2(d). Given Santamaria-Ames's past criminal record and broken promises of rehabilitation, he faces a formidable task in sustaining his burden of proof. However, he cannot be denied that opportunity.
 
 
 28
 Thus, we conclude the district court erred by denying Santamaria-Ames the opportunity to demonstrate his eligibility for naturalization under section 1440.[8] Consistent with Yuen, we hold that the case must be remanded to the district court to determine whether Santamaria-Ames was, during the one-year regulatory period, and continues to be, a person of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States. See Yuen, 184 F.2d at 497. Both the United States and Santamaria-Ames should be allowed to furnish further evidence. Id.
 
 VI.
 
 29
 Citing INS delay, INS statements in collateral proceedings and alleged misrepresentations to the district court, Santamaria-Ames urges that the INS be estopped from asserting he is not of good moral character. Mere file processing delay alone is insufficient to estop the government. INS v. Miranda, 459 U.S. 14, 18-19, 103 S.Ct. 281, 283, 74 L.Ed.2d 12 (1982). Estoppel is appropriate only when the government has committed "affirmative misconduct." Jaa v. United States INS, 779 F.2d 569, 572 (9th Cir.1986). In order to be estopped by a collateral judgment, the issue in contention must have been actually litigated and critical to the judgment. Town of North Bonneville v. Callaway, 10 F.3d 1505, 1508 (9th Cir.1993). Application of these principles, coupled with an absence of proof of affirmative governmental misconduct and detrimental reliance in the record, are fatal to Santamaria-Ames's theory.
 
 VII.
 
 30
 The judgment of the district court is vacated and this matter is remanded.
 
 
 
 [1]
 Specifically, section 1440 states in relevant part:
 (a) Requirements. Any person who, while an alien or a noncitizen national of the United States, has served honorably in an active-duty status in the military, air or naval forces of the United States during [certain designated periods of conflict such as World War I, World War II and Vietnam, and others designated by Executive Order] ..., and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment or induction such person shall have been in the United States, the Canal Zone, American Samoa or Swains Island, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence....
 (b) Exceptions. A person filing an application under subsection (a) of this section shall comply in all other respects with the requirements of this subchapter, except that
 (1) he may be naturalized regardless of age, and notwithstanding the provisions of section 318 [8 U.S.C. § 1429] as they relate to deportability and the provisions of section 331 [8 U.S.C. § 1429]; ...
 (2) no period of residence or specified period of physical presence within the United States or any State or district of the Service in the United States shall be required; and
 (3) service in the military, air or naval forces of the United States shall be proved by a duly authenticated certification from the executive department under which the applicant service or is serving....
 8 U.S.C. § 1440 (emphasis added).
 
 
 [2]
 8 U.S.C. § 1427 provides in relevant part:
 (a) Residence. No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years ... and (3) during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.
 (e) Determination. In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.
 8 U.S.C. § 1427 (emphasis added).
 
 
 [3]
 Santamaria-Ames also argues that the INS violates its own Interpretations by examining pre-regulatory period conduct. Santamaria-Ames cites an INS Interpretation stating that, "When no specific period of residence is required, but the petitioner is required to establish good moral character, consideration must be given to his conduct and utterances during a reasonable period of time immediately preceding the filing of the petition for naturalization and during the period between the date of filing and the final hearing." 9 Gordon & Mailman, Immigration Law and Procedure 257 (quoting INS INTERP 329.1(6)). Santamaria-Ames argues under such Interpretation, evidence of Santamaria-Ames's criminal conduct over his entire lifetime may not be considered. He fails to note that the INS Interpretation goes on to say, "In determining whether the petitioner has met the burden of establishing good moral character, the inquiry into these matters shall extend to the petitioner's entire lifetime." Id. Thus, INS Interpretations contemplate consideration of events outside the regulatory period
 
 
 [4]
 Before and after the enactment of 8 C.F.R. § 329.2(d) and the current versions of 8 U.S.C. §§ 1427, 1440, the courts were divided on whether naturalization may be denied solely on the basis of crimes committed prior to the statutory period. See, e.g., Marcantonio v. United States, 185 F.2d 934, 937 (4th Cir.1950) (under predecessor to 8 U.S.C. § 1427, naturalization cannot be denied solely based on crimes prior to statutory period); Molsen v. Young, 182 F.2d 480, 483 (5th Cir.1950) (under predecessor to 8 U.S.C. § 1427, statutory period is the minimum period in which good moral character must be demonstrated because the statutory period is "at least" five years), vacated on other grounds, 340 U.S. 880, 71 S.Ct. 195, 95 L.Ed. 639 (1950); Tan v. INS, 931 F.Supp. 725, 729-732 (D.Haw.1996) (under 8 C.F.R. § 329.2(d) and 8 U.S.C. § 1440, courts cannot use events outside the one-year regulatory period in denying a naturalization application); Suey Chin, 173 F.Supp. 510, 512 (S.D.N.Y.1959) (petitioner's conduct prior to statutory period may not be sole basis for denial of naturalization under 8 U.S.C. § 1440)
 
 
 [5]
 As discussed above, the current statute, 8 U.S.C. § 1440, and regulation, 8 C.F.R. § 329.2(d), require that a petitioner establish good moral character from the year preceding the filing of his application to the present
 
 
 [6]
 This position is consistent with INS Interpretations, which state that "Congress undoubtedly intended to make provision for the reformation and eventual naturalization of persons who were guilty of past misconduct" and, "[T]he Service considered proper an inquiry into antecedent events for the purpose of evaluating misconduct or explaining other facts that had occurred within the crucial period in order to determine whether an actual reformation had taken place, and whether the applicant, in fact, had been a person of good moral character throughout the requisite period." 9 Gordon & Mailman, Immigration Law and Procedure 131-32 (quoting INS Interpretation 316.1(2))
 
 
 [7]
 The INS correctly argues that an agency's construction of its own regulations is entitled to substantial deference. See Lyng v. Payne, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986). However, deference is not afforded if the administrative construction is clearly contrary to the plain and sensible meaning of the regulation. Borregard v. National Transp. Safety Board, 46 F.3d 944, 946 (9th Cir.1995). Further, the INS interpretation of a statute is subject to de novo review. Tang v. Reno, 77 F.3d 1194, 1196 (9th Cir.1996). The INS argues here that a finding of lack of good moral character under 8 C.F.R. § 329.2(d) may be based solely on criminal acts and broken promises of rehabilitation that occurred prior to the regulatory period. However, given the plain meaning of the statutes and regulations at issue, the holding of Yuen, the legislative history, and the INS INTERP described in footnote 5, supra, we do not adopt the INS' construction in this case. See Almero, 18 F.3d at 760
 
 
 [8]
 Even though the district court erred by adopting the INS's arguments that conduct prior to the regulatory period may be the sole basis for finding lack of good moral character, we may affirm the district court's denial of Santamaria-Ames's naturalization application on any basis supported in the record. Mason, 862 F.2d at 193. If the record conclusively demonstrated that, under the standards set forth above, Santamaria-Ames had not established good moral character at present and during the year preceding the filing of his naturalization application (i.e. from May 11, 1991 to the present), then we could affirm the district court. However, in absence of any record at all on the issue, we cannot