**Petition of Martha Marie KIELBLOCK To be Admitted a Citizen of the United States of America.**

**No. 208252.**

United States District Court S. D. California, Central Division.

July 10, 1958.

Ray E. Griffin, Los Angeles, Cal., for petitioner.

Richard C. Hoy, Dist. Director, Los Angeles, Dist. Immigration & Naturalization Service, U. S. Dept. of Justice, Los Angeles, by Joseph A. Shonman, Naturalization Examiner, Los Angeles, for U. S.

TOLIN, District Judge.

Petitioner, a formerly married but presently unmarried woman of mature age, has filed her Petition to Be Admitted a Citizen of the United States of America. The Immigration and Naturalization Service has objected thereto and claims that petitioner is statutorily ineligible for naturalization. The Service contends that she is not a person of good moral character. Admittedly over a period of several years she has engaged in a course of sexual relationship with one I. J. Cameron to whom she was not married. This is the only assignment of alleged bad character. The practice has been discontinued for less than one year. The point has been made that some of these acts were of adulterous character because Cameron had been married, and although the marriage had been the subject of an interlocutory decree of divorce, the statutes of California provide that actual divorce does not occur until the entry of final judgment. The final judgment was not entered until after there had been several sexual acts between Cameron and the petitioner. The wording of the California Adultery Statute[1] removes the

1. Cal.Civ.Code, § 93.
   "Adultery Defined. Adultery is the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife. (Enacted 1872.)"

distinctions between interlocutory and final judgment of divorce from importance in this case.

It is an admitted fact that petitioner has not been a married woman during her residence in the United States.

The related statutes[2] do not meet the present fact situation and, hence, neither suggest moral turpitude or any act prohibited by California law.

There is no evidence of cohabitation of petitioner and Cameron.[3] On the contrary, although frankly admitting a course of sexual acts together, each of these persons denies cohabitation and there is nothing in the evidence to contradict them.

The satisfaction of sexual appetite is a peculiarly private matter, ordinarily concerning only the participants in the sexual act. It becomes a matter of official concern when some statute of the United States or of a State is violated. Otherwise it will be treated by courts as an act of immorality if it be commercialized, as in the case of prostitution, or if illegitimate children are begotten. Likewise, open flaunting publicly what should be a private matter or promiscuity might adversely affect a petitioner's standing as a moral person.

This case is notably lacking in any of these aggravating factors. The woman loved the man and hoped that he would ultimately marry her, although it is plain from the evidence that he had no intention of doing so. The acts occurred in the privacy of her home, and except for the circumstance of the frankness of the parties on being questioned, would probably never have been brought to the Court's attention. The parties are mature adults. They bear good reputations in their respective communities.

The Government contends that even if the sexual relationship was not adulterous, it amounted to fornication and that this establishes the petitioner to be a person not of good moral character.

Both parties have filed memoranda and each side has cited an abundance of authority for their position. Probably the most distinguished Judicial author to write upon the subject within recent years was the respected Chief Judge Learned Hand who stated in an Opinion[4]:

Petitioner has resided in California for more than 5 years.

Cohabitation is defined in Black's Law Dictionary, 3rd Ed. (1933):

"Cohabitation. Living together; living together as husband and wife; sexual intercourse. (Citations)

"Cohabitation means having the same habitation, not a sojourn, a habit of visiting or remaining for a time; there must be something more than mere meretricious intercourse. (Citations)

"—Cohabiting in state of adultery. One or more acts of sexual intercourse while living together. (Citations)"

Webster's New International Dictionary, Second Edition, Unabridged (Published by G. & C. Merriam Company, Springfield, Mass [1956]), defines it: "co-hab' it (kŏ-hăb' ĭt), v. i.; Co-hab' it-ed; Co-hab' it-ing. [LL. cohabitare, fr. co- + habitare to dwell, to have possession of (a place), freq. of habere to have. See Habit, n. & v.] 1. To dwell or abide in company. Archaic. 2. To dwell or live together as husband and wife. * * *".

---

2. Cal.Penal Code, § 269a.
   "Cohabitation and adultery; punishment
   "Every person who lives in a state of cohabitation and adultery is guilty of a misdemeanor and punishable by a fine not exceeding one thousand dollars, or by imprisonment in the county jail not exceeding one year, or by both. (Added Stats.1905, c. 498, p. 656, § 1. As amended Stats.1911, c. 242, p. 426, § 1.)"
   Cal.Penal Code, § 269b.
   "Adultery; each party married to another; evidence
   "If two persons, each being married to another, live together in a state of cohabitation and adultery, each is guilty of a misdemeanor. A recorded certificate of marriage or a certified copy thereof, there being no interlocutory decree of divorce, proves the marriage of a person for the purpose of this section. (Added Stats.1905, c. 498, p. 657, § 2. As amended Stats.1911, c. 242, p. 426, § 2; Stats.1933, c. 647, p. 1678, § 1.)"

3. Cohabitation is an ingredient of the prohibitions of both § 269a and § 269b California Penal Code.

4. Schmidt v. United States, 2 Cir. 1949, 177 F.2d 450, 451.

"The foregoing are the only cases that we have discovered in Courts of Appeal which touch nearly enough upon the case at bar to be important; and it must be owned that the law upon the subject is not free from doubt. We do not see how we can get any help from outside. It would not be practicable—even if the parties had asked for it, which they did not—to conduct an inquiry as to what is the common conscience on the point. Even though we could take a poll, it would not be enough merely to count heads, without any appraisal of the voters. A majority of the votes of those in prisons and brothels, for instance, ought scarcely to outweigh the votes of accredited churchgoers. Nor can we see any reason to suppose that the opinion of clergymen would be a more reliable estimate than our own. The situation is one in which to proceed by any available method would not be more likely to satisfy the impalpable standard, deliberately chosen, than that we adopted in the foregoing cases: that is, to resort to our own conjecture, fallible as we recognize it to be. It is true that recent investigations have attempted to throw light upon the actual habits of men in the petitioner's position, and they have disclosed—what few people would have doubted in any event—that his practice is far from uncommon; but it does not follow that on this point common practice may not have diverged as much from precept as it often does. We have answered in the negative the question whether an unmarried man must live completely celibate, or forfeit his claim to a 'good moral character'; but, as we have said, those were cases of continuous, though adulterous, union. We have now to say whether it makes a critical difference that the alien's lapses are casual, concupiscent and promiscuous, but not adulterous. We do not believe that discussion will make our conclusion more persuasive; but, so far as we can divine anything so tenebrous and impalpable as the common conscience, these added features do not make a critical difference."

It is a practical precept of the democratic form of government that those who live within a republic should participate in its government as citizens. The petitioner has resided here for more than the requisite number of years. Her reputation has been good. She has been more than ordinarily industrious and has integrated very respectably into a good neighborhood. The Court finds that she is now, and for more than five years immediately prior to filing her petition has been, a person of good moral character.

Petitioner may appear and be admitted to citizenship in Department 6 of this Court upon any Monday at 10:00 A.M. following termination of a period of time within which an appeal might be taken (provided that no appeal be taken within that period); or if an appeal be taken, she may appear at the time of the spreading of the mandate unless the mandate require differently.