In re Petition for **NATURALIZATION OF Mustafa Yusef ODEH.**

**No. 268695.**

United States District Court
E. D. Michigan, S. D.
Aug. 3, 1960.

Andrew J. Belanger, Jr., Detroit, Mich., United States Naturalization Examiner.

K. Fred Ajluni, Detroit, Mich., for petitioner.

LEVIN, Chief Judge.

A designated naturalization examiner has recommended a denial of the petition for naturalization on the ground that the petitioner has not established "good moral character" for the period of five years immediately preceding the date of the filing of his petition for naturalization, as required under Sections 316(a) and 101(f) of the Immigration and Nationality Act, 8 U.S.C.A. §§ 1427(a) and 1101(f).

The petitioner, twenty-three years of age and single, is a native and national of Jordan and has resided in the United States continuously since his lawful admission for permanent residence on November 9, 1953. He is a student at the Detroit Institute of Technology, an accredited college, and supports himself through part-time employment. The petition for naturalization was filed on April 20, 1959.

■ The major objection of the naturalization examiner concerns the petitioner's alleged cohabitation with a single woman. The evidence to support that conclusion is as follows: On Friday, November 8, 1957, the petitioner rented an apartment on a week-to-week basis. The manager of the apartment building testified that the petitioner was with a young woman about nineteen years of age and that he nodded in an affirmative manner when she inquired if the female companion was his wife. The manager also said the woman left the apartment the next afternoon and on Sunday departed with a suitcase and some clothing over her arm. She further stated that she saw the young woman inside the apartment. A detective of the Detroit Police Department testified that on November 12 he arrested the petitioner at his apartment.[1] In searching the premises, he noticed female apparel, both undergarments and outer clothing, in dresser drawers and in the closet.

The petitioner explained that he allowed the young woman to store some of her clothing in his apartment until she obtained permanent accommodations at the Y.W.C.A. He denied that she stayed overnight at his apartment and that any sexual intimacies had occurred. I observed the petitioner on the witness stand and have no reason to doubt his honesty and sincerity.

There was an opportunity for sexual activity between the petitioner and the young woman in question, but the record does not support a conclusion that such intimacies occurred.[2] Compare the factual situation in this case with United States ex rel. Exarchou v. Murff, 2 Cir., 1959, 265 F.2d 504.

■ Even if I were to accept the conclusion of the naturalization examiner that sexual intercourse must have occurred, it is doubtful that this alone indicates lack of "good moral character," thereby precluding naturalization. In Schmidt v. United States, 2 Cir., 1949, 177 F.2d 450, Judge Learned Hand held that an unmarried alien who occasionally had had sexual intimacies with single women did not, because of such acts alone, fail to establish that he was a per-

---

1. The petitioner was acquitted of the charge for which he was arrested.

2. "Lewd and lascivious cohabitation" is a misdemeanor (though rarely enforced) under Michigan law. 25 M.S.A. § 28.567, Comp.Laws Supp. 1956, § 750.335. The petitioner could not now be prosecuted for the misdemeanor of cohabitation, even assuming that his behavior fell within the statutory definitions, as both participants must be prosecuted within one year after the alleged acts occurred.

son of "good moral character." This decision was cited to support the determination in Petition of Kielblock, D.C.S.D. Cal.1958, 163 F.Supp. 687.

A second objection to granting the petition is that the petitioner received sixteen traffic tickets, of which fourteen were moving violations, between September, 1956, and June, 1958.[3]

The petitioner's automobile, his first-owned vehicle, had seen many years of service before he acquired it and was in need of a muffler, which he could not purchase because of insufficient funds. The petitioner's signal facial characteristics are such that, together with the appearance and noise of his vehicle, he would almost certainly attract a traffic policeman's attention and be questioned on suspicion of wrongdoing. After receiving his last ticket in 1958, the petitioner sold the automobile.

Traffic violations may indeed indicate lack of "good moral character". Fields, "Conflicts in Naturalization Decisions," 10 Temple L.Q. 272, 286-7 (1936); Petition of Donath, No. 8753 (D.C.N.J. 1953), reported in 39 Cornell L.Q. 478 (1954). However, having seen the petitioner and having considered the facts, I take the view that the violations in this case do not demonstrate disrespect for law and authority.

The petitioner was only sixteen years of age when he arrived in what was to him a new country with a strange culture. The traffic violations and the incident concerning the apartment perhaps reflect his difficulty in adjusting to some of the responsibilities of a mature adult, but they do not constitute the incidents envisioned by Congress as detracting from a person's qualifications for citizenship. The petitioner has sustained the burden of demonstrating his "good moral character."

The petition is granted.

3. Seven tickets were for speeding—all being either five or ten miles over the speed limit. The other tickets were: improper or prohibited turns (three times); failure to change address on driver's license (twice); insufficient lights; driving the wrong way on a one-way street; excessive noise; failure to stop after slightly damaging an automobile—this was not what is usually referred to as a hit-and-run case.