**In re Petition for Naturalization of Konrad GARSTKA.**

**No. 12455.**

United States District Court
W. D. Michigan, S. D.

Jan. 27, 1969.

Lowell R. Palmes, Asst. Dist. Director, for Citizenship, Detroit, Mich., for naturalization examiner.

Melvyn E. Stein, Chicago, Ill., for petitioner.

FOX, District Judge.

The United States Naturalization Service opposes the petition of Konrad Garstka on the grounds that he fathered an illegitimate child born June 7, 1964, and has therefore not established that he is of the requisite good moral character for citizenship.

Because good moral character requires a case-by-case analysis, the background surrounding the petitioner's alleged illicit behavior should be examined. Petitioner, a widower, was employed from July, 1963, to February, 1965, as a physician in the Memorial Hospital at Elmhurst, Illinois. During that time he became acquainted with a nineteen year old nurse's aid named Linda Altendorf. They dated frequently and on a number of occasions engaged in sexual relations. On June 7, 1964, Linda gave birth to a child. Child support proceedings were subsequently instituted against petitioner. A Paternity Draft Order from the First Municipal District of the Circuit Court of Cook County, Illinois, No. 64 CCMC 279553 entered on December 17, 1964, indicates the petitioner's admitted paternity of the child and that he was ordered to pay $80 per month toward the support of the child. To date, petitioner has complied with the order of the court.

Section 101(f) of the Immigration and Nationality Act, 8 U.S.C. § 1101(f) describes conduct which precludes a finding of good moral character: adultery, murder, perjury, trafficking in narcotics, and crimes of moral turpitude. There is no claim that petitioner's conduct puts him into any of the above cat-

egories. However, the definition goes on to say:

"The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or is not of good moral character."

No case which holds conduct such as petitioner's to be not of good moral character has been cited to the court. The cases closest to the instant situation involve sexual relations between an unmarried petitioner and an unmarried partner. The great weight of authority has been that such conduct does not preclude a finding of good moral character. Schmidt v. United States, 177 F.2d 450 (2nd Cir. 1949); In re Kielblock's Petition, 163 F.Supp. 687 (S.D.Cal. 1958); Petition of Denessy, 200 F.Supp. 354 (D.Del. 1961); In re Van Dessel, 243 F. Supp. 328 (E.D.Pa.1965).

The problems raised by this type of case were perhaps best analyzed by Learned Hand in Schmidt, supra, 177 F.2d at 451–452:

[I]t must be owned that the law upon the subject is not free from doubt. We do not see how we can get any help from outside. It would not be practicable—even if the parties had asked for it, which they did not—to conduct an inquiry as to what is the common conscience on the point. Even though we could take a poll, it would not be enough merely to count heads, without any appraisal of the voters. A majority of the votes of those in prisons and brothels, for instance, ought scarcely to outweigh the votes of accredited churchgoers. Nor can we see any reason to suppose that the opinion of clergymen would be a more reliable estimate than our own. The situation is one in which to proceed by any available method would not be more likely to satisfy the impalpable standard, deliberately chosen, than that we adopted in the foregoing cases: that is, to resort to our own conjecture, fallible as we recognize it to be. It is true that recent investigations have attempted to throw light upon the actual habits of men in the petitioner's position, and they have disclosed—what few people would have doubted in any event—that his practice is far from uncommon; but it does not follow that on this point common practice may not have diverged as much from precept as it often does. We have answered in the negative the question whether an unmarried man must live completely celibate, or forfeit his claim to a "good moral character"; but, as we have said, those were cases of continuous, though adulterous, union. We have now to say whether it makes a critical difference that the alien's lapses are casual, concupiscent and promiscuous, but not adulterous.

The same reasoning applies to this case. This court must say whether "it makes a critical difference" that the birth of an illegitimate child resulted from sexual relations that would not otherwise have precluded a finding of good moral character.

That the possibility of conception exists whenever sexual relations take place cannot be debated. Because conception took place in this instance should not render petitioner any more immoral than if it had not taken place.

Furthermore, the fact that petitioner has kept up his support payments is persuasive to the court as to his good moral character. And to deny citizenship might result in a discontinuance of those payments, surely a result inconsistent with public policy.

Again, Learned Hand said:

"We do not believe that discussion will make our conclusion more persuasive; but, so far as we can divine anything so tenebrous and impalpable as the common conscience, these added features do not make a critical difference."

All findings of the naturalization examiner are hereby adopted by the court, except the conclusion of law that the fathering of an illegitimate child precludes a finding of good moral character. Set

forth below are the findings of fact and conclusions of law made by the court.

Findings of Fact:

(a) That petitioner was a member of Polska Zjednoczona Partia Robotnicza, the Communist Party of Poland from 1948 to 1949, his membership having terminated more than ten years prior to the date he filed his petition for naturalization.

(b) That petitioner became a member of this organization for the purpose of pursuing a medical education.

(c) That petitioner is not now a member of any Communist organization and has not been such a member since 1949.

(d) That during the period of petitioner's membership in the Communist Party in Poland he did not, and does not now believe in the principles of that organization.

(e) That the petitioner believes in a democratic form of government and is attached to the principles of the Constitution and is well disposed to the good order and happiness of the United States.

(f) That the petitioner committed illicit sexual intercourse during the statutory period within which good moral character must be established—that is, since December 13, 1960.

(g) That as a result of such illicit sexual intercourse an illegitimate child was born on June 7, 1964.

Conclusions of Law:

(a) That petitioner's membership in Polska Zjednoczona Partia Robotnicza has not rendered him ineligible to naturalization under Section 313 of the Immigration and Nationality Act, 8 U.S.C. § 1424.

(b) That petitioner's sexual activities resulting in the birth of an illegitimate child do not preclude a finding of his good moral character required by Section 316 of the Immigration and Nationality Act, 8 U.S.C. § 1427.

(c) That petitioner has established the good moral character requisite for naturalization.

For all of the above reasons, this petition for naturalization is granted.