**Piotr PUCIATY, Plaintiff,**

v.

**U.S. DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

**No. CIV. 99–072 ACK LEK.**

United States District Court,
D. Hawai'i.

April 19, 2000.

Ronald T. Oldenburg, Honolulu, HI, for Piotr Puciaty.

Piotr Puciaty, Aiea, HI, pro se.

Thomas A. Helper, Office of the United States Attorney, Honolulu, HI, for Dept. of Justice, Immigration and Naturalization Service, defendant.

## ORDER GRANTING PLAINTIFF'S MO-TION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

Plaintiff Piotr Puciaty ("Plaintiff") seeks summary judgment against the United States Department of Justice, Immigration and Naturalization Service ("INS"), claiming that the INS wrongly denied his application for naturalization. The INS cross-moves for summary judgment. The sole issue presented in these cross motions is whether or not the failure to pay a $3,106.00 civil judgment to an individual shows a lack of "good moral character" sufficient to deny Plaintiff naturalization.

The Plaintiff alleges the following facts, which the INS either admits, or admits were asserted by Plaintiff during administrative proceedings (and which were rejected by the INS as insufficient to receive naturalization). Plaintiff is a native of Poland. At all times since entering the United States, Plaintiff has been gainfully employed. Additionally, he has paid all federal, state, and local taxes required of him.

Plaintiff entered the United States in 1985. He lived in Illinois from 1985 until the late 1980s.[1] During this time, he held an Illinois driver's license. Plaintiff lost this driver's license. He did not report the loss to any authority. Plaintiff alleges that someone found his license, was involved in a 1990 auto accident, and used his license as identification. Plaintiff maintains that he was not involved in the 1990 auto accident, as he was already living in Hawaii.[2] A civil action against Plaintiff was initiated in Cook County, Illinois after the accident. A default judgment against Plaintiff was entered on March 3, 1993 in the amount of $3,106 ("the judgment" or "the Illinois judgment").

Plaintiff alleges that he had no knowledge of this action and was never notified of it before the Illinois judgment was issued. Plaintiff argues that he only learned of the judgment when he applied for a Hawaii driver's license in May of 1993.[3]

---

1. Plaintiff's Complaint, Separate and Concise Statement of Facts, and Affidavit offer conflicting facts of the time line. His complaint states that he lived in "Illinois from 1985 for approximately 4 years." In comparison, his Separate and Concise Statement of Facts states that he lived in Illinois from 1985 until 1987, and then moved to Toronto. Finally, his Affidavit, submitted March 13, 2000 per the Court's instruction, states that he moved to Illinois in 1986 and then went to Canada from summer of 1998 until February of 1989 (all the while keeping his legal residence as Illinois). All three sources, however, state that he moved to Hawaii in 1989. Finally, it should be noted that the INS was given, and declined, an opportunity to respond to Plaintiff's March 13, 2000 Affidavit.

2. Plaintiff presents W–2 forms from 1989 issued by Hawaii businesses to support his contention that he was employed and living in Hawaii in 1989, and therefore, was not possibly involved in the 1990 Illinois accident. The Court makes no finding on this issue, but notes that a W–2 form provides no information about Plaintiff's whereabouts at specific times, only that he earned money from that employer during the calendar year.

3. In his Affidavit of March 13, 2000, Plaintiff stated that he learned of the judgment in 1996. See Pl. Aff. ¶ 6. However, his motion, supported by another letter by him, states that he learned of the judgment in 1993. See Pl. Mot. SJ at 3; Pl. CSF at ¶ 7.

He alleges that he has not received any further notice concerning the judgment. The Plaintiff noted in his brief, however, that the Illinois judgment may be expunged (per his request) in March of 2000 if there is no action to pursue the judgment as of that time.[4] Plaintiff also informed the Court, in an affidavit, that he made an inquiry into the judgment on a trip to Illinois. He was told by the Cook County Court what steps he would have to take to have it corrected. *See* Pl. Aff. ¶ 6. Plaintiff's schedule did not allow him to follow these steps, including being present for a hearing, at that time. *See id.*

On August 11, 1997, Plaintiff was interviewed by the INS regarding his application for naturalization. At this interview, the INS did not inquire about the existence of any pending civil judgments. Plaintiff volunteered the existence of the civil judgment. At the same time, he explained the surrounding circumstances (i.e., why he claimed it was unjustified and why he was unable to correct it). Plaintiff's application was denied on March 5, 1998. The INS based its denial on the ground that Plaintiff's failure to pay or initiate payment on the Illinois judgment showed a lack of good moral character.

On April 2, 1998, Plaintiff appealed this decision by filing a Request for Hearing on a Decision of Naturalization Proceedings. Plaintiff was interviewed by the INS on August 13, 1998. In this meeting, Plaintiff attempted to explain the circumstances of the Illinois judgment. He did not explain why he was unable to correct the judgment to the satisfaction of the INS. Plaintiff's appeal was denied in a letter dated October 5, 1998. The INS wrote:

> [Y]ou provided no documentation stating that the judgment was closed or dismissed by the State of Illinois or that you have made efforts to initiate payments to satisfy the judgment; nor have you initiated any investigative actions on

your part to fight the judgment. You have not provided adequate proof that the judgment from the State of Illinois against you is unwarranted. After careful review, the original decision to deny your application for naturalization must remain unchanged.

Pl. Mot. SJ, Ex. C. (Letter from Donald A. Radcliffe to Plaintiff, 10/5/98).

Plaintiff filed a complaint in this Court on January 28, 1999, appealing the INS decision. Plaintiff's motion for summary judgment was filed on November 19, 1999. The INS's Cross Motion for Summary Judgment was filed on January 27, 2000. A hearing was held before this Court on March 13, 2000.

## STANDARD OF REVIEW

A person whose application for naturalization is denied after a hearing with an immigration officer may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. *See* 8 U.S.C. § 1421(c) (1994); 8 C.F.R. § 336.9 (1999). Such review shall be de novo. *See id.* The court shall make its own findings of fact and conclusions of law. *See id.* At the request of the petitioner, the court shall conduct a hearing de novo on the application. *See id.*

## DISCUSSION

### I *The Parties' Arguments*

Plaintiff argues that his application for United States citizenship was denied without any basis in statute, regulation, policy, case law, or otherwise. He maintains that he meets all of the statutory and regulatory requirements for citizenship despite his failure to satisfy the Illinois judgment. Second, Plaintiff claims that failure to pay a civil judgment does not constitute lack of "good moral character" sufficient to pre-

---

4. The Plaintiff states, in his brief, that there has been no action to pursue the judgment as of his brief's filing date, November 19, 1999. This had not changed as of the hearing held March 13, 2000.

clude citizenship. Plaintiff wants this Court to require the INS to grant him United States citizenship.

The INS argues that Plaintiff's failure to satisfy or move to set aside the Illinois judgment is willful noncompliance with a court order. The INS maintains that this willful noncompliance means that Plaintiff cannot establish good moral character, as he is required to do so by law.

## II *The "Good Moral Character" Requirement*

■ After living in the United States for approximately twelve years, Plaintiff applied to become a naturalized citizen. "The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). There is no natural or inherent right to become a United States citizen. *See United States v. Schwimmer*, 279 U.S. 644, 649, 49 S.Ct. 448, 73 L.Ed. 889 (1929), *overruled in part on other grounds by Girouard v. United States*, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946). Citizenship is a gift or a privilege which the government may refuse or may grant on such conditions as it may prescribe. *See Schneiderman v. United States*, 320 U.S. 118, 131, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943); *Tutun v. United States*, 270 U.S. 568, 578, 46 S.Ct. 425, 70 L.Ed. 738 (1926). "[T]he Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship." *Berenyi v. District Director*, 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967).

■ When applying for naturalization, the petitioner bears the burden of showing his or her eligibility. *See Berenyi*, 385 U.S. at 637, 87 S.Ct. 666; *Tan v. United States Dep't of Justice, I.N.S.*, 931 F.Supp. 725, 728 (D.Haw.1996) (Ezra, J.); 8 U.S.C. § 1427(e); 8 C.F.R. §§ 316.2(b) & 316.10(a)(1). All doubts are resolved in favor of the United States and against the

petitioner. *See Berenyi*, 385 U.S. at 637, 87 S.Ct. 666; *Tan*, 931 F.Supp. at 728. The INS shall grant the application if the applicant complies with all requirements for naturalization. *See* 8 C.F.R. § 335.3. If an application is denied, the applicant may request a hearing before an immigration officer. *See* 8 U.S.C. § 1447(a); 8 C.F.R. § 316.14(b)(2). If an application is again denied, the applicant may appeal to a United States district court. *See* 8 U.S.C. § 1421(c); 8 C.F.R. § 336.9.

■ Among the requirements [5] for naturalization is that an applicant possess "good moral character" during the five year required time of residence. *See* 8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a)(7); 8 C.F.R. 316.10. Federal statutes and regulations outline certain behavior which automatically precludes a finding of good moral character. Sub-section 1101(f) of Title 8 provides that, "No person shall be regarded as, or found to be, a person of good moral character who . . . is, or was:"

(1) a habitual drunkard;

(2) a person illegally connected with prostitution, who helps to smuggle aliens, or is a previously removed alien;

(3) convicted of, or admits committing, crimes listed in 8 U.S.C. § 1182(A)—(C);

(4) a person whose income is derived principally from illegal gambling;

(5) a person convicted of two or more gambling offenses during the statutory period;

(6) a person who gave false testimony to obtain benefits under the INA;

(7) a person confined to a penal institution for 180 days or more by any conviction, even if the offense did not occur within the statutory period;

(8) a person convicted of an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43), at any time.

---

**5.** This appeal focuses on the Plaintiff's alleged lack of good moral character. Counsel for the government, in the hearing held March

13, 2000, indicated that there are no other bars to Plaintiff's naturalization under 8 U.S.C. § 1427.

*See* 8 U.S.C. § 1101(f). Federal regulations provide an even lengthier list of conduct for which an applicant shall be automatically found to lack good moral character. *See* 8 C.F.R. § 316.10 (overlaps a great deal with listed offenses in 8 U.S.C. § 1101(f), and adds actions such as failure to support dependents, polygamy, and having an extramarital affair which tended to destroy an existing marriage).

 Neither the list of conduct in § 1101(f) or that in the regulations is exhaustive. In other words, the inquiry into whether a person possesses good moral character does not end when the decision maker reaches the bottom of these lists. "The fact any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." *See* 8 U.S.C. § 1101(f). Similarly to § 1101(f), the regulations make clear that the listed elements are not an exhaustive list of conduct precluding a finding of good moral character. *See* 8 C.F.R. § 316.10(a)—(b) (determinations of good moral character are made on a "case-by-case basis" and take into account the elements enumerated in § 316.10(b) *and* the standards of the average citizen in the community of residence). Additionally, INS Interpretations of the Immigration and Naturalization Act ("INA") state that Congress intended that conduct not falling under a category in the statute "may nevertheless be considered in determining whether good moral character is lacking." *See* Charles Gordon et al., 15 *Immigration Law and Procedure,* Interpretations of the Immigration and Naturalization Service, § 316.1(g)(1)(ii), at 139 (1993) (hereinafter "Interpretations"). The Interpretations also define good moral character with a general definition, and not by reference to a statutory or regulatory list. "Good moral character ... has been interpreted as meaning character which measures up to the standards of average citizens of the community in which the applicant resides." Interpretations, § 316.1(e), at 130. Therefore, the Court finds that when making a

determination of good moral character, it should look to the statute and the regulations, but if conduct complained of does not fall within their enumerated categories, it must continue its analysis by looking to the "standards of average citizens." As counsel for the government noted in the hearing on this matter, this is a matter of discretion for the Court.

### III *Does Plaintiff Meet His Burden of Proving "Good Moral Character"?*

 Plaintiff admits that a civil judgment is outstanding against him. He admits that he learned of the Illinois judgment within two months of it being entered against him. In the four years that elapsed between learning of the judgment and applying for naturalization in 1997, he did not pay the judgment or express a financial inability to do so. He did, however, inquire with the court in Illinois what he needed to do to set aside the judgment. He did not follow through on this information due to his schedule. Plaintiff has not done anything about satisfying or setting aside the judgment in the two years which elapsed since his application was denied due to failure to pay the judgment.

In his favor, Plaintiff has been continuously employed since entering the United States. He has worked in the food and beverage industry during his residency in Hawaii. He is currently a server at a hotel, a job which he has held since 1994. *See* Pl. Aff. ¶ 5. He has paid his taxes dutifully. Other than a brief period when he entered the United States as a refugee, he has not received welfare or public assistance. Finally, with the exception of two arrests for driving under the influence ("DUI"), to which he pleaded no contest, he has been a law abiding resident. *See* Pl. Aff. ¶ 7.

When examining an applicant whose conduct does not fall within the enumerated factors precluding a finding of good moral character, the decision maker is to

use its discretion and look to the standards of an average citizen. *See* 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(a)(2). That is what the INS did. The Court, however, reaches a different conclusion from the INS.

While the Court does not condone Plaintiff's failure to take steps to satisfy or set aside the Illinois judgment, it cannot find that this, in and of itself, is sufficient ground to find that Plaintiff lacks good moral character. Counsel for the government conceded that the INS has no other problem with Plaintiff being naturalized. The Court cannot conclude that Plaintiff's failure to take steps to either set aside or pay the default judgment is the type of behavior that the "good moral character" requirement sought to weed out amongst potential citizens.

An opinion by Judge Learned Hand on this issue is instructive. *See Yin–Shing Woo v. United States,* 288 F.2d 434 (2d Cir.1961). In *Yin–Shing Woo,* the court reviewed a denial of naturalization based upon the applicant's inability to prove "that he was 'well disposed to the good order [6] and happiness of the United States.'" *Id.* at 434–35. The applicant in *Yin–Shing Woo* was arrested for failing to answer or pay 23 traffic tickets and was fined $345. He was imprisoned until he paid this fine. *See id.* at 434. He offered no excuse for his failure to pay except that he had been told that such tickets were not serious. *See id.* at 435. Agreeing that under a rigid interpretation of the "good order" requirement the applicant would fail, the court nevertheless reversed the district court and granted the naturalization petition. *See id.* The Court explained,

> Like any other statute, this one is to be read with its purposes in mind, which are to admit as citizens only those who are in general accord with the basic principles of the community. Disregard of parking regulations, even when re-

peated so often as this was, is not inimical to its 'good order,' so construed. It would be otherwise, if the result of the violation defeated a cardinal purpose of the Naturalization Law itself, such as *the surveillance of immigrants who seek to enter.*

*Id.* The court continued, holding that,

> [W]e think it plain that this statute did not mean to make naturalization depend upon obedience to such a regulation as that before us.... In the case at bar we hold that disobedience to the parking regulations of a great city, *even though repeated and deliberate,* does not show a disposition contrary to the 'good order' of the United States.

*Id.* (emphasis added); *see also In re Naturalization Petition of Odeh,* 185 F.Supp. 953, 955 (E.D.Mich.1960) (finding good moral character despite the applicant's sixteen traffic tickets, fourteen of which were moving violations, because they did "not demonstrate disrespect for law and authority" and "do not constitute the incidents envisioned by Congress as detracting from a persons's qualifications for citizenship."). Similarly to these holdings, this Court concludes that Congress clearly did not intend that naturalization depend upon an applicant satisfying or setting aside a civil judgment (at least, as to one of this nature). Plaintiff has otherwise shown himself to be "in general accord with the basic principles of the community." This one shortcoming should not bar his application. Plaintiff informed the Court that he made inquiries into setting aside the judgment, but because that required him to be in Illinois for a hearing, and because that would interfere with his job in Hawaii, he did not pursue this further. Like the courts in *Yin–Shing Woo* and *Odeh,* this Court finds that Plaintiff has met his burden of proving his good moral character.

Other factors also point the Court towards the conclusion that Plaintiff does

---

6. The "good order" criteria is simply an alternate way of phrasing the "good moral charac-

ter" requirement. *See Yin–Shing Woo,* 288 F.2d at 435; 8 U.S.C. § 1427(a)(3).

not lack good moral character. First, Plaintiff has been a productive, self-sufficient resident of the United States since his arrival here as a refugee from Communist Poland. He has been continually employed. He has paid his taxes. Second, there is no inquiry into civil judgments during the naturalization interview process, nor are applicants asked about the existence of civil judgments in the naturalization application. The only reason this became an issue in the instant case is that Plaintiff volunteered the information. As Plaintiff's counsel noted at the hearing on this matter, there is no way to tell how many of the hundreds of people naturalized each year in this community alone had civil judgments outstanding against them. Nobody knows the number because the INS does not ask, yet the INS argues that this factor should exclude Plaintiff. The Court disagrees. Third, the Court cannot conclude that Plaintiff's actions fall below the standards of an average citizen. Plaintiff lives in Hawaii. Average citizens would not buy an expensive plane ticket and travel thousands of miles to Chicago to appear at a hearing to set aside a default judgment which they believe was wrongly imposed and which is not being pursued. Finally, the Court finds that failure to satisfy or set aside this judgment is distinguishable from cases the government cited about a naturalization applicant's failure to pay taxes, see *Gambino v. Pomeroy*, 562 F.Supp. 974, 987 (D.N.J.1982) (resident alien who did not file federal or state tax returns for four years failed to show he had good moral character), and even the traffic ticket cases. Taxes and traffic fines are obligations owed to the government. They fund public expenditures that help all residents. The civil judgment here was owed to a private party. Even ignoring the apathy of this judgment creditor and Plaintiff's contentions about the wrongfulness of the judgment in the first place, failure to satisfy a debt to a private party is less of an "evil" against the good order of the United States than failure to pay taxes or traffic fines.

The Court again notes that it does not condone Plaintiff's behavior. It does conclude, however, that his behavior does not preclude a finding of good moral character for naturalization. In summary, the Court finds substantial evidence that Plaintiff is of good moral character and that the INS clearly erred as a matter of law in denying his application.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgement and DENIES the INS's Cross Motion for Summary Judgement. The application for naturalization should be GRANTED.

IT IS SO ORDERED.