**Ali Mohamed KEAIK, Petitioner,**

v.

**Mick DEDVUKAY, District Director, United States Citizenship and Immigration Service, Emelio T. Gonzalez, Director, United States Citizenship and Immigration Service, Michael Chertoff, Secretary, Department of Homeland Security, and Michael Mukasey, United States Attorney General, Respondents.**

**Case No. 07–13198.**

United States District Court,
E.D. Michigan,
Southern Division.

June 2, 2008.

Marshal E. Hyman, Marshal Hyman Assoc., Troy, MI, for Petitioner.

Derri T. Thomas, U.S. Attorney's Office, Detroit, MI, for Respondents.

## OPINION AND ORDER GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT

DAVID M. LAWSON, District Judge.

The petitioner, Ali Mohamed Keaik, seeks *de novo* review of his application for citizenship, as is his right under 8 U.S.C. § 1421(c), after his application was denied by the United States Citizenship and Immigration Service (CIS). The petitioner, a young man from Lebanon, argues that the CIS erroneously found a lack of good moral character. According to the petitioner, the CIS placed undue weight on relatively minor traffic offenses that do not show a lack of respect for the law. The respondents contest the premise of this argument: they submit that the traffic offenses were collectively serious, the petitioner was not forthright about them, and he failed to submit documents needed to evaluate these incidents fully. After reviewing the record submitted, the Court finds that no material fact issues require an evidentiary hearing; the petitioner's traffic record, although quite blemished, does not itself stand as an obstacle to his establishing good moral character; the petitioner's failure to answer truthfully the questions relating to his traffic violations convinces the Court that the petitioner has not carried his burden of showing good moral character; and the failure of the petitioner to furnish proper documentation relating to the traffic offenses within a reasonable period of time constitutes a failure to prosecute his citizenship application. Therefore, the Court will deny the petitioner's motion for summary judgment, grant the respondents' motion for summary judgment, and dismiss the case with prejudice.

I.

The record submitted by the parties furnishes the uncontested facts. The peti-

tioner in this case, Ali Mohamed Keaik, is a thirty-one-year-old native of Lebanon. Keaik was lawfully admitted to the United States in May 1997 on a B–2 visitor visa. Although that visa expired three months later, the petitioner stayed in the United States without seeking renewal. The petitioner then married a United States citizen, Jessica Gray, on January 29, 1999. Less than one month later, Grey filed a Form I–130 visa petition on behalf of the petitioner, and the petitioner applied to become a permanent resident. The petitioner became a lawful permanent resident on March 23, 2000, but his status was conditional because he was the beneficiary of a relative visa less than two years after marrying an American citizen. *See* 8 U.S.C. § 1186a. On October 12, 2000, less than seven months later, the petitioner and Gray were divorced. On February 18, 2001, the petitioner married another woman by the name of Nada Zahir. On February 13, 2003, the petitioner filed an application to remove the conditions on his residency. Following an interview in 2005, that relief was granted.

On January 31, 2005, the petitioner filed his application for naturalization. He reported, accurately, that he had been a lawful permanent resident for at least five years. However, the petitioner was not truthful when answering the questions dealing with past legal offenses. In the section titled "Good Moral Character," the petitioner indicated that he had never "been arrested, cited, or detained by any law enforcement officer … for any reason"; had never "been charged with committing any crime or offense"; had never "been convicted of a crime or offense"; and had never "received a suspended sentence, been placed on probation, or been paroled." Resps.' Mot. for Summ. J., Ex. E, App. for Naturalization at 8. None of these answers was accurate. According to records produced subsequently, the petitioner was convicted of driving with a suspended license on January 15, 2002 and January 30, 2002; of failing to display a valid license on February 13, 2002; and of speeding on February 13, 2002, May 30, 2002, and July 8, 2004. As it turns out, the petitioner also was convicted of speeding three more times following his naturalization application, on April 22, 2005, April 12, 2006, and September 12, 2006.

The petitioner appeared for the required interview regarding his naturalization application on June 22, 2005. There, the petitioner conceded that he had been arrested, his license had been suspended, and he had received "about five" traffic tickets. Resps.' Mot. for Summ. J., Ex. H, Sworn Statement. The CIS informed the petitioner on the same day of the interview that a decision could not yet be made on his application because additional documentation was needed. The CIS requested certified copies of "any and all [p]olice [r]eport(s) relating to any arrests," "[t]he [o]riginal [c]harge/[c]omplaint relating to any and all arrests," "[t]he [c]ourt [d]isposition of any and all arrests," and the petitioner's "[d]ischarge [f]rom [p]robation and [p]roof [t]hat [a]ll [f]ines/[f]ees [h]ave [b]een [p]aid." Resps.' Mot. for Summ. J., Ex. I, Request for Info. The CIS warned the petitioner that failure to furnish these documents could lead to denial of his application.

In response to this request for information, the petitioner wrote a "letter of explanation," to which he attached a handful of documents. Resps.' Mot. for Summ. J., Ex. J, Letter of Explanation. The petitioner explained as follows:

> I am just writing this letter to explain that I did not know that my driver license was suspended twice. On 12/07/2001 my Driver License was suspended. On 01/15/2002 I went to court

after I found out that my driver license was suspended (I was not arrested, I found out at the Secretary of State) and I took care of it. I pleaded guilty and paid the fine.

To the best of my knowledge I thought that my driver license was reinstated because I paid the fine and I was told that I don't owe the City of Dearborn ANY money. Then on 01/28/2002, just 13 days after having pleaded guilty, paid the fine and reinstated my Driver License, I was arrested in Birmingham for driving with a suspended Driver license. The reason of the suspension was a non-payment of a seat belt ticket to the City of Dearborn.

On 01/30/02, I went back to court and I pleaded guilty, paid the fine. I was sentenced to 2 year probation and 3 days work program. I completed my sentence. I still don't understand how they let me go the 1st time (01/15/2002) when they knew that I still had a non-paid ticket.

I can assure sir that this 2nd suspension was a mistake but I did not take the time to fight it in court because at this time I was going through some financial problems and I did not have the money to either hire an attorney nor miss work. I hope that this letter will help my case.

*Ibid.* (errors in original).

The petitioner attached four documents to this letter. The first two documents are titled "Certification of Court Disposition"; they describe, in scant detail, the petitioner's proceedings in the Dearborn district court for driving with a suspended license. Exs. to Letter of Explanation at 1–2. The documents do not provide a clear picture of exactly what occurred, but the contents of these documents seem to mesh with the petitioner's story. One certification reads:

On 12/07/2001, the defendant was charged with Drove While License Sus-pended, Revoked, Denied. On 01/15/2002, the defendant plead [sic] guilty and was sentenced to $200 fine. The fine was paid and the case closed.

*Id.* at 2. The other states:

On 12/13/2000, the defendant was charged with Drove While License Sus-pended, Revoked, Denied. On 01/30/2002, the defendant plead [sic] guilty and was sentenced to 2 years probation; 3 days work program; $60 work program costs; and a $250 fine. On 06/13/2002, the case was closed.

*Id.* at 1.

The third and fourth documents, a form police report and a narrative police report from the City of Birmingham Police Department, also relate to the petitioner's conviction of driving with a suspended license. The narrative report reads as follows:

On the 01/28/02 at 0907 hrs while on routine patrol I observed the listed vehicle W/B on Lincoln near Stanley. The vehicle speed was 42 mph in a 25–mph zone. The vehicle was stopped Lincoln and Southfield. A routine LEIN check showed 1 Warrant out of the 19th District Court. SOS showed 2 suspensions. The driver was arrest[,] transported to the Station where he was processed per procedure[,] and released on $100.00 bond for 48th DWLS charge and $350.00 for the 19th District.

*Id.* at 4 (errors in original).

On February 8, 2006, the CIS denied the petitioner's naturalization application for failure to prosecute, which in turn prevented the petitioner from carrying his burden of establishing good moral character. The CIS offered the following explanation:

The record reflects that on 06/22/2005 you appeared for an examination with a Service officer on the N–400, Application

for Naturalization that you filed with USCIS on 01/31/2005.

Following your examination, you were issued a Form N–14 because you stated that you had been arrested for driving while your Michigan driver license was suspended (DWLS). Subsequent to your examination on 06/22/2005, you submitted documents that revealed that your license had been suspended not once, but two times. However, you only submitted a certified "police report" for one DWLS charge.

In addition, at your examination on 06/22/2005, you also indicated that you have received four or five citations. You did not provide copies [of] each of these citations at your examination and as such, it is not determinable, based upon the documents that you failed to submit[,] how many of the citations resulted in actual arrests.

Consequently, it does not appear that you have submitted . . .

1.  A complete set of your Police and Arrest Records.

2.  A complete set of your Court Disposition Records.

In that you failed to reveal at your examination the fact that you have been charged not once but twice with DWLS, *prima facie* evidence exists to *suggest* that you have not met the burden of establishing the good moral character requirement. Irrespective of this *possibility*, the Service cannot conclude, at this time, that you have met the good moral character requirement because you did not provide certified copies of all police reports related to the DWLS charges, since *you pled guilty to said offense on <u>more than one</u> occasion.*

Therefore, because you failed to submit all of the required documents that the Service requested by way of Form N–14, subsequent to your N–400 examina-

tion on 06/22/2005, you have failed to establish your eligibility for naturalization. Accordingly, your application must be, and hereby is, denied.

Resps.' Mot. for Summ. J., Ex. K, Denial Doc. at 2. The CIS informed the petitioner that he could request a review hearing within thirty days.

On March 6, 2006, the petitioner filed a timely request for a hearing pursuant to 8 U.S.C. § 1447(a). At the hearing, held on November 14, 2006, the petitioner provided a copy of his driving record (discussed above). The petitioner had written notes next to some of the offense-entries, attempting to explain what had occurred. Those explanations are barely legible, and they seem simply to rehash the petitioner's earlier explanation regarding his license being suspended.

On April 5, 2007, the CIS affirmed the denial and sent the petitioner a letter to that effect. The CIS explained that the naturalization application was originally denied because the petitioner "did not establish, to the satisfaction of the Service, that [he was] a person of good moral character during the statutory period when a showing of good moral character is a prerequisite" and "failed to provide complete documentation as requested." Resps.' Mot. for Summ. J., Ex. N, Affirmation of Denial at 1–2. The CIS abided by this decision, writing as follows:

On *11/14/2006*, you were scheduled to appear for your Hearing.

Explanation: You appeared as scheduled. You were accompanied by your accredited representative. The only documentation submitted on your behalf was an unofficial computer printout of your driving record. It was noted from the printout submitted, that you had received two additional citations for speeding since your N–400, Application

for Naturalization, was originally denied. The latest citations occurred on February 23, 2006, and August 26, 2006. No certified proof of disposition of the citations was provided. Based on your actions, it appears that you neither regard nor respect the rules and regulations as set forth by the State. No pattern of reformation can be determined by your behavior. Therefore, in light of the fact that insufficient documentation was submitted to overcome the assumption that reformation has been made [sic], the previously rendered decision will not be vacated. Thus, the following order is entered:

**ORDER:** The denial of your N–400, Application for Naturalization, was correct and the decision is hereby affirmed.

*Id.* at 2.

Naturally, the petitioner was not pleased with this decision. In a deposition taken in January 2008, the petitioner suggested that he viewed his actions as consistent with typical American behavior:

I never broke the law, never was in jail, except my driving record, and even if you look at this ticket, except the first two ticket where I was still a wild young man driving nice car that I never drove in my life, most of the tickets that I have are like five, ten over the speed that I got on the highway. Like every single American, name me one person in America who does not have a ticket.

Resps.' Mot. for Summ. J., Ex. FF, Pet. Dep. at 60.

On August 1, 2007, the petitioner filed the present suit seeking *de novo* review of the denial under 8 U.S.C. § 1421(c). The petitioner has not requested an evidentiary hearing, but instead argues that the undisputed facts establish the required elements entitling him to United States citizenship. The respondents disagree and have filed a cross-motions for summary judgment.

The Court heard oral argument on the motions on May 29, 2008.

## II.

This Court has jurisdiction over the matter pursuant to 8 U.S.C. § 1421(c). According to the procedures established by Congress, the CIS examines an application for naturalization in accordance with 8 U.S.C. § 1446. If the examiner denies the application, the applicant may request a hearing before an immigration officer. 8 U.S.C. § 1447(a). If the immigration officer denies the application following the hearing, the applicant "may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Ibid.*

## III.

As noted above, the petitioner has not requested an evidentiary hearing in this matter. In fact, both sides have moved for summary judgment, contending that the record contains no disputed material facts. The only dispute, according to the parties, is the legal consequences that flow from the undisputed facts stated in the record.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir.2003) ("The fact that the parties have filed cross-

motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized standards when deciding such cross motions: when this Court considers cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 506 (6th Cir.2003).

A motion for summary judgment under Fed.R.Civ.P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The petitioner argues that the only contested element in his application for citizenship is proof of good moral character, and he has established all of the other requisites. The government appears to agree with that contention. The petitioner states that the presence of good moral character is generally established by the absence of misconduct, and he insists that his poor driving record does not amount to the type of misconduct that is disqualifying. Rather, he says, most of the offenses that support a finding of bad character are felonies, crimes of moral turpitude, or ly-

ing to obtain an immigration benefit, which the petitioner has never committed. He cites a number of decisions to show that traffic law violations and other such conduct—such as his twin convictions of driving on a suspended license—do not give rise to a finding of poor moral character.

The respondents point out that all but two of the petitioner's numerous offenses occurred during the five-year statutory period for establishing good moral character (*see* 8 C.F.R. § 316.10(a)(1)), and, more importantly, the petitioner was not forthcoming about these incidents. The petitioner denied any law enforcement contact on his initial application, and although he acknowledged brushes with the law during his June 22, 2005 interview, even then he was less than candid, admitting only five tickets when he had actually been cited eighteen different times. They say that the petitioner's letter of explanation raised more questions than it answered, and coupled with the lack of proper documentation, it failed to rebut the inference that the petitioner's moral character and respect for the law was unfavorable. Because the petitioner failed to rebut that inference with records that showed he had completed probation, his traffic stops did not result in arrest, and all his traffic citations were resolved, the conclusion that the petitioner failed to prosecute his application was warranted as well, the respondents argue.

■ After an individual has been a lawful permanent resident for five years, he becomes eligible for naturalization. 8 U.S.C. § 1427(a). However, aliens "have no natural right to become citizens," and therefore they must satisfy the requirements prescribed by Congress. *United States v. Schwimmer,* 279 U.S. 644, 649, 49 S.Ct. 448, 73 L.Ed. 889 (1929). Apart from the residency requirement (and other prerequisites that are not material for pur-

poses of this case), the applicant must be "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a). The applicant bears the burden of establishing all the requirements by a preponderance of the evidence. 8 C.F.R. §§ 316.2(b) & 316.10(a)(1); *Berenyi v. District Director, Immigration and Naturalization Service*, 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967). All doubts are to be resolved in favor of the government. *Berenyi*, 385 U.S. at 637, 87 S.Ct. 666.

Federal regulations instruct the CIS to consider the moral character issue on a "case-by-case basis," taking into account designated factors as well as "the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). An applicant "shall be found to lack good moral character" if, during the statutory period, he was convicted of a crime of moral turpitude, 8 C.F.R. § 316.10(b)(2)(i); violated a drug law, 8 C.F.R. § 316.10(b)(2)(iii); or gave false testimony (whether material or not) in order to obtain an immigration benefit, 8 C.F.R. § 316.10(b)(2)(vi). The regulations specify that "[a]n applicant who has been on probation, parole, or suspended sentence during all or part of the statutory period is not thereby precluded from establishing good moral character, but such probation, parole, or suspended sentence may be considered by the Service in determining good moral character." 8 C.F.R. § 316.10(c)(1). Nevertheless, "[a]n application will not be approved until *after* the probation, parole, or suspended sentence has been completed." *Ibid.* (emphasis added).

When a person applies for naturalization, the CIS reviews the application and other submissions and conducts an in-per-son interview. 8 U.S.C. § 1446(b); 8 C.F.R. § 335.2(a), (c). If the CIS detects a problem in the application, "the Service officer may continue the initial examination on an application for one reexamination, to afford the applicant an opportunity to overcome deficiencies on the application that may arise during the examination." 8 C.F.R. § 335.3(b). "If the applicant is unable to overcome the deficiencies in the application, the application shall be denied." *Ibid.* The CIS may order an applicant to furnish documents it deems necessary to determine eligibility, and failure to comply comes at a heavy price:

> An applicant for naturalization who has appeared for the examination on his or her application as provided in § 335.2 shall be considered as failing to prosecute such application if he or she, without good cause being shown, ... fails to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization.

8 C.F.R. § 335.7.

As mentioned above, if the examiner denies the application, the applicant may request a hearing by an immigration officer. 8 U.S.C. § 1447(a). If the immigration officer denies the application following the hearing, the applicant may seek a *de novo* review of the denial before the district court. 8 U.S.C. § 1421(c).

██ After reviewing the documents submitted, the Court agrees with the conclusion of the CIS that the petitioner has not established good moral character by a preponderance of the evidence, and he failed "to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization." 8 C.F.R. § 335.7. The CIS determined that the petitioner failed

to meet the moral-character requirement, and that he failed to prosecute his claim by failing to furnish information that could have shed more light on the petitioner's character. The Court also finds this to be the case, not because the petitioner's poor driving record demonstrates that he is a person of bad moral character, but because he lied about his past law enforcement contacts on his application and minimized his disregard of the traffic laws when given a chance to correct his prevarications.

In his application for naturalization, the petitioner reported that he had never "been arrested, cited, or detained by any law enforcement officer ... for any reason"; had never "been charged with committing any crime or offense"; had never "been convicted of a crime or offense"; and had never "received a suspended sentence, been placed on probation, or been paroled." App. for Naturalization at 8. However, records uncovered afterwards showed that the petitioner was convicted of driving with a suspended license on two occasions and numerous other low-level traffic offenses. The petitioner changed his story when he was initially interviewed, acknowledging that he had received "about five" traffic tickets (still an understatement of the actual figure). Sworn Statement at 1. Faced with this inconsistency, the CIS requested specific documentation. The petitioner complied in part but not in full. Although he provided substantial information concerning the driving-with-a-suspended-license convictions, he furnished no information concerning other tickets and no proof that he was discharged from probation. From all this, there were at least three reasons why naturalization was inappropriate, two of which convince the Court that the petition must be denied.

Initially, the petitioner's legal history could cast doubt on his good moral character. It is true that none of the petitioner's

offenses, including driving with a suspended license, were serious enough to imply bad moral character automatically. *See* 8 C.F.R. § 316.10(b)(1)-(2). Nevertheless, the regulations contain a catch-all provision, which states:

> Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant:
>
> . . .
>
> (iii) Committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2).

8 C.F.R. § 316.10(b)(3). The petitioner filed his application for naturalization on January 31, 2005. The five-year statutory period for establishing good moral character therefore began on January 31, 2000. During that time period, the petitioner committed at least nine traffic offenses, including driving with a suspended license twice, for which he received two years probation. Further, the petitioner was twice cited for speeding after he filed his application. Those tickets fall within the statutory period as well, since the period includes "the date of the application up to the time of admission to citizenship." 8 U.S.C. § 1427(a). Nevertheless, the Court agrees with the petitioner that bad moral character can not be found solely on these incidents. Although another judge in this district has held that "[t]raffic violations may indeed indicate lack of 'good moral character,'" *In re Petition for Naturalization of Odeh,* 185 F.Supp. 953, 955 (E.D.Mich.1960), he held in the same case that sixteen garden-variety traffic tickets did not "constitute the incidents envisioned by Congress as detracting from a person's qualifications for citizenship," *ibid.* Other

courts have reached a similar conclusion. *See Yin–Shing Woo v. United States,* 288 F.2d 434, 435 (2d Cir.1961) (holding that disregard of parking laws, even as many as twenty-three times, is not so "inimical" to the good order of the nation as to justify denial of naturalization); *Puciaty v. Dep't of Justice,* 125 F.Supp.2d 1035, 1040–41 (D.Hawai'i 2000) (finding failure to pay civil judgment insufficient to support determination of poor moral character).

Although these offenses are insufficient to establish bad moral character by themselves, they certainly bolster the conclusion of poor moral character premised on the petitioner's lack of candor, which brings us to the second point. By failing to disclose his convictions, the petitioner gave false testimony to obtain an immigration benefit in violation of 8 U.S.C. § 1101(f)(6) and 8 C.F.R. § 316.10(b)(2)(vi). There has been no claim that the petitioner lacks an understanding of English (he satisfied the language requirement), so it is difficult to see how he could have so seriously misunderstood the simple question whether he had ever "been arrested, cited, or detained by any law enforcement officer ... for any reason." App. for Naturalization at 8. Since an applicant "shall be found to lack good moral character" if he gives false testimony to secure an immigration benefit, 8 C.F.R. § 316.10(b)(2)(vi), the petitioner's lack of candor alone justifies denial of his application and this petition.

Finally, there is the issue on which the CIS placed the most weight: failure to prosecute. The regulations expressly state that failure to prosecute will be found where an applicant, without good cause being shown, "fails to provide within a reasonable period of time such documents, information, or testimony deemed by the Service to be necessary to establish his or her eligibility for naturalization." 8

C.F.R. § 335.7. Following the initial interview, the CIS formally requested a series of documents to assess the petitioner's legal history. The petitioner complied only in part, producing some (but not all) of the documents concerning his convictions for driving with a suspended license and none of the documents relating to his other citations. This is all the more significant given that the petitioner did not furnish documentation showing completion of probation. After all, an application for naturalization "will not be approved until after the probation, parole, or suspended sentence has been completed." 8 C.F.R. § 316.10(c)(1).

On balance, it is clear that the CIS properly denied the petitioner's application, and after *de novo* review the Court is constrained to agree with that result. The petitioner has not carried his burden of establishing entitlement to naturalization. Of course, this does not mean that the petitioner cannot remain in the United States as a lawful permanent resident, or that he cannot apply for citizenship at a later date. At present, however, the petitioner is not eligible for naturalization.

## IV.

The Court finds upon a *de novo* review of the record that the petitioner has not established by a preponderance of the evidence that he is "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a).

Accordingly, it is **ORDERED** that the petitioner's motion for summary judgment [dkt # 13] is **DENIED.**

It is further **ORDERED** that the respondents' motion for summary judgment [dkt # 14] is **GRANTED.**

It is further **ORDERED** that the petition is **DISMISSED with prejudice.**