**Enrico Labez CACHO, Petitioner,**

v.

**John ASHCROFT, and Donald A. Radcliffe, Honolulu District Director, United States Immigration and Naturalization Service, Respondents.**

No. CV 03–00185DAE/KSC.

United States District Court,
D. Hawai'i.

March 11, 2004.

**1141**

David P. McCauley, Jamesner A. Dumlao, Damon Key Leong Kupchak Hastert, Honolulu, HI, for Enrico Labez Cacho, petitioner.

Thomas A. Helper, Office of the United States Attorney, Honolulu, HI, Robert D. McCallum, Jr., U.S. Department of Justice, Washington, DC, for John Ashcroft, Donald A. Radcliffe, Honolulu District Director of the United States Immigration and Naturalization Service, respondents.

*ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF WHETHER THE IMMIGRATION AND NATURALIZATION SERVICE ERRED IN DENYING PETITIONER'S NATURALIZATION APPLICATION BASED ON THE ADMINISTRATIVE RECORD*

EZRA, Chief Judge.

The court heard Petitioner's Motion on March 8, 2004. David P. McCauley, Esq., and Jamesner A. Dumlao, Esq., appeared at the hearing on behalf of Plaintiff; Ann Mei, Esq., and Thomas A. Helper, Assistant United States Attorney, appeared at the hearing on behalf of Respondents. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Petitioner's Motion for Summary Judgment on the Issue of Whether the Immigration and Naturalization Service ("INS")[1] Erred in Denying Petitioner's Naturalization Application Based on the Administrative Record.

## BACKGROUND

Chief Enrico Labez Cacho ("Petitioner") is a 42 year-old native of the Philippines who is married to a United States citizen. He has served in the United States Navy since 1983 and currently holds the rank of Chief Petty Officer. During the course of his twenty year career, Petitioner has been honored with Navy Commendation Medals, Navy Achievement Medals, and Good Conduct Awards. *See* Exhibits A—C attached to Petitioner's Memorandum Submitting Exhibits in Support of Petition for Review of Denial of Naturalization Application, filed June 30, 2003.

On November 4, 1987, Petitioner was arrested on a charge of aggravated sexual battery. Through a plea agreement, Petitioner's conviction was reduced to the lesser charge of Sexual Battery, a misdemeanor. On March 14, 1988, Petitioner was convicted of sexual battery of a minor in violation of Section 18.2–67.3 of the Virginia Code.

The details of the incident are as follows. On November 4, 1987, Petitioner returned to Norfolk after an extended deployment and immediately went to visit his girlfriend. Administrative Record at 48. Upon arriving at the residence, Petitioner's girlfriend's sister let him into the house. Petitioner went to his girlfriend's room and found her in bed with another man. Petitioner left the room and entered the bedroom of his girlfriend's 11–year–old

---

1. The court notes that since Petitioner's application was denied, the INS has been incorporated into the newly established Department of Homeland Security. Given that the INS's decision, however, and not that of the Department of Homeland Security is being appealed in the instant motion, the court will refer to the Respondent agency as the INS.

daughter and son. U.S. Naval Investigative Report, Exh. 3 attached to Respondents' Opposition to Petitioners' Motion for Summary Judgment on the Issue of Whether the Immigration and Naturalization Service Erred in Denying Petitioner's Application Based on the Administrative Record ("Respondents' Opposition").

According to the report of a Norfolk Police Department investigation from the U.S. Naval Investigative Service, Petitioner "did not plan to hurt [the daughter] that he would be 'gentle'." *Id.* Petitioner then started kissing her lips, licking her stomach and ears. He then began to "touch her breasts under her clothing as well as kissing her breasts both under and over her clothing" over the course of thirty minutes. *Id.* The girl informed Petitioner that she needed to use the bathroom, and she proceeded to lock herself in the bathroom.

Petitioner was arrested by the Naval Investigative Service several days later and was turned over to the Norfolk Police Department. United States Department of Justice, Immigration and Naturalization Service, Record of Sworn Statement, Exh. 2 attached to Plaintiff's Opposition at 2. According to Petitioner, he was tried before an administrative separation board, as well as the Juvenile Court in Norfolk, Virginia. *Id.* The administrative board decided not to expel Petitioner from the Navy allegedly because Petitioner was an asset to the Navy based on various written statements by coworkers and supervisors. *Id.* at 4. Petitioner states that he was punished by the administrative board in the following ways: he was denied the opportunity to attend advanced electrical maintenance school, and was required to attend an alcohol rehabilitation program. *Id.*

The Norfolk Court did not hold a trial because Petitioner pled to the lesser misdemeanor charge of sexual battery. *Id.*

The court imposed a $1,000 fine, and Petitioner had to complete community service, stay away from minors, and go to therapy for sexual deviation. *Id.* Petitioner complied with the court's requirements.

On February 23, 2000, Petitioner submitted an application for naturalization pursuant to INA § 329, 8 U.S.C. § 1440 and Presidential Executive Order No. 12939. Petitioner was interviewed by the INS on December 19, 2000, August 2, 2001, and March 7, 2001, in relation to his application. On April 29, 2002, the INS denied Petitioner's application on the grounds that Petitioner provided false testimony to the INS about the circumstances underlying his conviction in an apparent effort to minimize the offense and obtain a favorable decision in his naturalization application. Respondents' Opposition at 7. The INS also noted that Petitioner's "attitude and responses during the course of [his naturalization] interview led the interviewing officer to believe that [he] d[id] not consider this crime to be serious." *See* Exh. C of Pet. Stmt. The officer stated that Petitioner failed to demonstrate remorse, or take responsibility for the severity of his actions.

The INS based their determination in part on the following excerpts of Petitioner's testimony:

Q: Have you ever been arrested by a law enforcement officer?

A: Yes.

Q: When were you arrested?

A: November 1987.

Q: Where were you arrested?

A: Norfolk, Virginia

Q: What were the circumstances of your arrest?

A: What exactly does that mean?

Q: What happened to cause you to be arrested?

A: I was charged with aggravated sexual battery.

Q: Where were you arrested?

A: It was on the ship USS Trenton in Norfolk, Virginia

Q: Why were you arrested?

A: I was charged with aggravated sexual battery.

Q: What happened?

A: I was arrested and taken to the Norfolk Police Department.

Q: Why were you arrested and charged with aggravated sexual battery?

A: In a few days before my arrest I had gone to the house of the girlfriend where I had molested her daughter.

Q: Was that your girlfriend's daughter?

A: Yes.

Q: What was your girlfriend's name?

A: (blocked out) I don't remember her last name anymore.

Q: How long did you know [your girlfriend]?

A: Of [sic] and on I think I knew her from 1983 to '87.

Q: What were the circumstances that led to your molestation of [your girlfriend's] daughter?

A. I had come back from a long deployment and had been drinking that night and then I went to her house, the details I'm not sure of anymore. I saw her in bed with another man. And I said goodbye to the kids. From what I remember, I left her after I said goodbye. And was arrested couple of days later.

Q. You said "goodbye to the kids" so how many children were there?

A. There was a younger brother and the daughter.

Q. How old was each child?

A. I don't remember.

Q. What were the names of the children?

A. The daughter is [name]. The younger brother I don't remember the name.

Q. In your description of the circumstances you did not indicate any molestation. What exactly happened?

A. The details are not clear anymore. I stopped after discovering my girlfriend with another man. I stopped at the next room to say goodbye to the children who were asleep in the next room and I woke up [the daughter] to let her know that I wasn't coming back anymore. And when I woke her up, I touched her breasts. And after saying goodbye, I left. When I found myself touching her breasts, I stopped what I was doing and I left. And went back to the ship. And then a couple days later I was arrested.

Q. About how old was [the daughter] at the time?

A. I don't remember.

Q. How long were you the children's bedroom?

A. I would guess 5, 10 minutes.

Q. Did you say goodbye to the younger brother?

A. Yes, I did.

Q. What did he say to you?

A. I don't remember his saying anything.

Q. Were you in the U.S. Navy at the time of this arrest?

A. Yes.

Q. Did you have a problem with alcohol at the time of the incident?

A. Yes.

Q. Did you complete the rehab program?

A. Yes, I did.

Q. Do you currently have a problem with alcohol?

A. I don't drink anymore.

.    .    .    .    .

Q. Is there anything else you wish to add to this statement?

A. Yes, that incident that happened 15 years ago was horrible and it was an event in my life that I would like to put behind me. I'm very sorry that it happened. Since that incident I have tried my best to be a model citizen both in the military and in the civilian community. In whatever possible way I could I tried to mold those that came under me in the military so they wouldn't have to go through the same mistakes that I did. I am truly sorry for what has happened years ago. I would like to continue serving this country as a U.S. citizen. That's all.

Record of Sworn Statement, Department of Homeland Security Administrative Record at 43–45.

In his Motion for Summary Judgment on the Issue of Whether the Immigration and Naturalization Service Erred in Denying Petitioner's Naturalization Application Based on the Administrative Record ("Petitioner's Motion"), Petitioner contends that the INS had no legal basis, or relied on an improper basis, for denying his application for naturalization. Petitioner instead asserts that he has in fact displayed good moral character during the requisite period for purposes of determining whether or not he is eligible for citizenship.

*STANDARD OF REVIEW*

■  Pursuant to INA § 310(c), 8 U.S.C. § 1421(c):

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States District Court for the district in which such person resides ... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c)(1996). Petitioner bears the burden of proof in proving the existence of the requisite qualifications for naturalization. *Jung,* 184 F.2d at 497.

Petitioner filed his application pursuant to Presidential Order codified in INA § 329, 8 U.S.C. § 1440. 8 U.S.C. § 1440 states in pertinent part:

Any person who, while an alien or noncitizen national of the United States, has served honorably ... in an active-duty status ..., in military operations involving armed conflict with a hostile foreign force, and who, if separated from such service was separated under honorable conditions, may be naturalized as provided in this section ..., whether or not he has been lawfully admitted to the United States for permanent residence.

8 U.S.C. § 1440.

While neither party contests that Petitioner is ineligible for naturalization under the requirements set forth in the Presidential Order codified in INA § 329, 8 U.S.C. § 1440, Petitioner must also meet a moral character requirement. Under 8 U.S.C. § 1440, an applicant must show that he or she "[h]as been, for at least one year prior to the filing of the application for naturalization, and continues to be, of good moral character, attached to the principles of the

Constitution of the United States, and favorably disposed toward the good order and happiness of the United States." 8 C.F.R. § 329.2(d).

■ "Good moral character ... was intended by Congress to mean a broad attachment to the principles of the Constitution of the United States and disposition to the good order and happiness of the United States." *Sugarman v. Dougall,* 413 U.S. 634, 660, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973) (citing H.R.Rep. No. 1365, 82d Cong.2d Sess., 78,80 (1952)). The statutes state that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was ... one who has given false testimony for the purpose of obtaining any benefit under this chapter." 8 U.S.C. § 1101(f)(6)(1996).

■ Although the regulations provide that the relevant time period for determining whether or not the petitioner has good character is the year prior to the filing of the application, "case law indicates that events transpiring outside of that designated period may be relevant to that determination." *Tan v. United States Dept. of Justice, Immigration and Naturalization Service,* 931 F.Supp. 725, 730 (D.Haw. 1996) (citing *Yuen Jung v. Barber,* 184, F.2d 491, 494–95 (9th Cir.1950)). "Whether the petitioner can establish that he has reformed and rehabilitated from his prior conduct is germane to the determination of whether he has established good moral character ...." *Santamaria–Ames v. Immigration and Naturalization Service,* 104 F.3d 1127, 1132 (1996)(further citations omitted). "But the only fact to be determined, and the only material one, is his moral character within the specified period." *Jung,* 184 F.2d at 495.

*DISCUSSION*

■ Respondents argue that Petitioner lied to the INS in an effort to gain a favorable determination on his naturalization petition. More specifically, Respondents point out that while Petitioner stated that he only touched the breast of his ex-girlfriend's eleven-year-old daughter, the Norfolk Police Report indicated that he had kissed her lips, licked her stomach and ears, as well as touched and kissed her breasts underneath her clothing. Respondents' Opposition at 6. Moreover, while Petitioner stated that the incident transpired over only five to ten minutes, the Norfolk Police Report states that it occurred over thirty minutes. Finally, Petitioner indicated that when he saw himself touching the girl's breast over her t-shirt with one hand, he realized that he was doing something wrong, stopped what he was doing, and left the room. In contrast, in the police report, the girl apparently informed Petitioner that she needed to use the restroom and locked herself in there until Petitioner left. Based on the above discrepancies in testimony, Respondents assert that Petitioner gave false testimony.

■ The court recognizes that there are particular discrepancies between Petitioner's account of the event given during his naturalization hearing and the event as described in the police report. The court, however, finds that Petitioner's actions fall short of giving false testimony for purposes of gaining the benefit of naturalization. As this court stated in *Tan,* false testimony for purposes of establishing good moral character "applies only to those misrepresentations made with the subjective intent of obtaining immigration benefits." *Tan,* 931 F.Supp. at 731 (citing *Kungys v. U.S.,* 485 U.S. 759, 780, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988)).

For various reasons, the Court finds any discrepancies between the two accounts

were not subjectively manipulated by Petitioner to ensure obtaining immigration benefits. First, the event occurred approximately fifteen years prior to Petitioner's naturalization interviews. Without looking at any record of the event, and given it was the sort of event that Petitioner has attempted to put behind him, it is not wholly unexpected that Petitioner would forget to include some of the more painful details. Moreover, Petitioner stated in his interview that he no longer remembered the details. When Respondents continued questioning Petitioner about the details that Petitioner had already stated he had difficulty remembering, Respondents should have expected that the answers given would not be entirely consistent. Moreover, the court finds that Petitioner did not omit details with the hopes of improving his chances of gaining citizenship. After all, Petitioner did admit to having been arrested for the crime of aggravated sexual battery and burglary of a dwelling, and admitted to pleading guilty to a single misdemeanor charge of sexual battery. He stated that he molested his girlfriend's daughter. Such admissions alone, regardless of the details, might influence one's chance of obtaining immigration benefits.

Respondents also note that the INS did not find that Petitioner considered the crime serious, and that he failed to show remorse or accept any responsibility for his actions. In its de novo review of the record, this court finds that Petitioner did express remorse and take responsibility for his actions. When asked at the end of his interview whether he had anything additional to add, Petitioner stated that the incident was "horrible" and was an "an event in my life that I would like to put behind me. I'm very sorry that it happened. Since that incident I have tried my best to be a model citizen both in the military and in the civilian community... I am truly sorry for what has happened

years ago. I would like to continue serving this country as a U.S. citizen." Record of Sworn Statement, Department of Homeland Security Administrative Record at 45. The court finds that the above quote evidences Petitioner's remorse for his past behavior, and his attempt to teach others to avoid what he considered a serious life mistake. The INS fails to point towards specific evidence that Petitioner was flippant or casual about the incident. Without such evidence, this court is unconvinced that Petitioner was not adequately serious and remorseful about his past criminal behavior.

Finally, Respondents seem to be concerned with the nature of the crime committed and the threat of recidivism. Respondents point out that subsequent to Petitioner's conviction, Congress made offenses like Petitioner's an aggravated felony which statutorily precludes the offenders from naturalization at any time. Respondents' Opposition at 8. Respondents contend that this change evidences Congress' intolerance for such conduct regardless of the circumstances. Respondents also note the high rate of recidivism associated with the crime and society's condemnation of such pedophilic behavior as additional reasons behind the denial of Petitioner's application.

The court finds Respondents' argument unpersuasive. First, Petitioner entered into a plea bargain which the Government accepted. The fact that Congress has changed its designation of the crime committed by Petitioner has no bearing on the issue of whether or not Petitioner has shown he has good moral character in the year prior to filing his application. As was stated in *Jung*, "[a]ll modern legislation dealing with crime and punishment proceeds upon the theory that aside from capital cases, no man is beyond redemption. We think a like principle underlies

these provisions for naturalization." *Id.* The issue in this case is whether Petitioner has reformed his conduct in the year in question such that he can be said to be a person of good moral conduct. Accordingly, the court finds that the fact that Congress has changed the designation of the crime is irrelevant to the instant motion.

Moreover, Respondents have not shown that their concern about Petitioner's potential to engage in recidivist behavior is anything but speculation. In fact, at the INS's request, Petitioner obtained a letter from the State Department of Human Services which reflected a lack of any complaints related to child abuse or neglect lodged against Petitioner. Exh. B attached to Petitioner's Reply. Moreover, in response to Respondents' concern over recidivism, Petitioner submitted to a deposition to address these concerns in which he affirmed his commitment to his religious faith and his understanding that sexual relations were only proper between him and his wife. Ex. C attached to Petitioner's Reply at 21–23.

Petitioner pled guilty to a single misdemeanor charge of sexual battery. He complied with the courts' order and paid the necessary fines. He also served five years of probation, including forty hours of public service. He never contacted the complaining party, and complied with the order to stay away from minors. He completed therapy for sexual deviation and completed an alcohol rehabilitation program. He served this country honorably both before and after the incident. Fifteen years have passed since the incident and Petitioner has never been reported to have committed any crime. The court does not find that, given the facts before it and those in the administrative record, that Respondents have a legitimate fear that Petitioner will engage in recidivist behavior.

The court agrees with Petitioner in his description of the crime as "horrible." However, in the context of a criminal sentence under the Federal Sentencing Guidelines his conduct would qualify as "aberrant behavior." There was clearly no planning or contemplation involved, the Petitioner at the time was in a state of severe emotional distress having returned from a long Navy deployment to find his girlfriend in bed with another man, and his judgment was impaired by alcohol. While this does not excuse his behavior, it also mitigates against the suggestion of the INS of the Petitioner's potential for recidivism. Without any evidence to the contrary, this court finds that Petitioner has demonstrated since this incident his good moral character such that his petition for naturalization should not have been denied.

## CONCLUSION

For the reasons stated above, the court GRANTS Petitioner's Motion for Summary Judgment on the Issue of Whether the Immigration and Naturalization Service Erred in Denying Petitioner's Application Based on the Administrative Record and directs that the Petition for Naturalization be granted.

IT IS SO ORDERED.